**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX
REFUND SCHEME LITIGATION

This document relates to:

18-cv-07828; 19-cv-01785; 19-cv-01867;
19-cv-01893; 19-cv-01781; 19-cv-01783;
19-cv-01866; 19-cv-01895; 19-cv-01794;
19-cv-01865; 19-cv-01904; 19-cv-01798;
19-cv-01869; 19-cv-01922; 19-cv-01800;
19-cv-01788; 19-cv-01870; 18-cv-07827;
19-cv-01791; 19-cv-01792; 19-cv-01928;
19-cv-01926; 19-cv-01868; 18-cv-07824;
19-cv-01929; 19-cv-01803; 19-cv-01806;
19-cv-01906; 19-cv-01801; 19-cv-01894;
19-cv-01808; 19-cv-01810; 19-cv-01809;
18-cv-04833; 19-cv-01911; 19-cv-01898;
19-cv-01812; 19-cv-01896; 19-cv-01871;
19-cv-01813; 19-cv-01930; 18-cv-07829;
18-cv-04434; 19-cv-01815; 19-cv-01818;
19-cv-01931; 19-cv-01918; 19-cv-01873;
19-cv-01924; 19-cv-10713; 21-cv-05339.

MASTER DOCKET
18-md-2865 (LAK)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE**
**TO EXCLUDE UNAUTHENTICATED HEARSAY DOCUMENTS**

**TABLE OF CONTENTS**

STATEMENT OF FACTS ............................................................................................................1

ARGUMENT.............................................................................................................................3

       A.      Defendants Preserve Their Authenticity Objection to the Elysium Documents......4

       B.      SKAT Seeks to Rely on the Elysium Documents for Their Truth ..........................4

       C.      The Elysium Documents Are Not Admissible Under the Business Records
             Exception ..............................................................................................................6

       D.      No Other Hearsay Exception Applies....................................................................11

CONCLUSION.........................................................................................................................11

i

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Bermudez v. City of New York*,
    2019 WL 136633 (E.D.N.Y. Jan. 8, 2019) ..................................................... 10

*Chevron Corp. v. Donziger*,
    974 F. Supp. 2d 362 (S.D.N.Y. 2014)..................................................... 10–11

*City of Almaty, Kazakhstan v. Ablyazov*,
    2021 WL 5154110 (S.D.N.Y. Nov. 5, 2021) ............................................... 10

*Curtis v. Perkins (In re Int'l Mgmt. Assocs., LLC)*,
    781 F.3d 1262 (11th Cir. 2015) ............................................................... 8–9

*Dzhabrailov v. Decker*,
    2020 WL 2731966 (S.D.N.Y. May 26, 2020) ............................................. 10

*Great Lakes Reinsurance (UK) SE v. Herzig*,
    673 F.Supp.3d 432 (S.D.N.Y. 2023).......................................................... 11

*Parsons v. Honeywell*,
    929 F.2d 901 (2d Cir. 1991)..................................................................... 11

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    592 B.R. 513 (Bankr. S.D.N.Y. 2018)........................................................ 9

*United States v. Dawkins*,
    999 F.3d 767 (2d Cir. 2021)..................................................................... 11

*United States v. Freidin*,
    849 F.2d 716 (2d Cir.1988)....................................................................... 9

*United States v. Pedroza*,
    750 F.2d 187 (2d Cir. 1984)....................................................................... 4

*United States v. Williams*,
    205 F.3d 23 (2d Cir. 2000)........................................................................ 9

## FEDERAL RULES

Fed. R. Evid. 703 ....................................................................................... 1
Fed. R. Evid. 801 ....................................................................................... 5
Fed. R. Evid. 803 ................................................................................... 6–7
Fed. R. Evid. 807 ..................................................................................... 11

Defendants hereby move to preclude the admission at trial of the documents Bates-stamped with the prefix ELYSIUM (the "Elysium Documents").  SKAT obtained the Elysium Documents from the Dubai offices of entities not involved in the transactions at issue in this case, but contends they are authentic records of the trading undertaken by the defendants and others through certain Solo-affiliated entities.  SKAT has no witness who can describe when, how, or under what circumstances the Elysium Documents were prepared.  Moreover, there are multiple indicia of the Elysium Documents' untrustworthiness, including (1) SKAT's allegation that the Solo entities were engaged in an elaborate fraud, which sometimes included falsifying records and (2) the fact that the Elysium documents are a confusing mishmash filled with extraneous materials.  SKAT cannot meet its burden to show that the Elysium Documents are admissible business records.[1]

## STATEMENT OF FACTS

Beginning in April 2020, SKAT produced to Defendants more than 10 million pages Bates-stamped with the prefix ELYSIUM.  The Elysium Documents are materials SKAT "received in its action pending before the Dubai International Financial Centre Courts against Elysium Global (Dubai) Limited and Elysium Properties Limited" (together, 'Elysium').  ECF No. 285.  Prior to producing the Elysium Documents to Defendants, SKAT did not review them for responsiveness.  *See* October 22, 2020, letter from Marc Weinstein to Mark Allison (Decl. of Sharon McCarthy ("McCarthy Decl.") Ex. 1) ("SKAT's discovery obligations do not require it to

---

[1]     On August 9, 2024, the Court ruled that certain materials from the Elysium Documents are "sufficiently reliable" for SKAT's expert witnesses—Bruce Dubinsky and Graham Wade—to rely upon them in their reports and testimony.  ECF Nos. 1119–20.  As the Court observed, "Federal Rule of Evidence 703 governs the sources of information on which experts may base their testimony," and this is a separate matter from the "admissibility of the Elysium Documents under the business records exception to the rule against hearsay."  ECF No. 1119.

undertake the massively burdensome task of reviewing that third party's database for responsiveness.").[2]  SKAT's lack of review was readily apparent from the fact that a not insignificant portion of SKAT's productions contain extraneous material, including "plainly non-responsive materials such as pornographic videos, home videos of children, and surveillance videos of a person defecating in a grocery store."  October 1, 2020, letter from Mark Allison to Marc Weinstein (McCarthy Decl. Ex. 2).

In SKAT's Dubai proceeding, SKAT alleged that Sanjay Shah "controlled" Elysium. ECF No. 285; ECF No. 816 ¶9 n.14 (claiming "Elysium Documents are electronic and hardcopy material seized in SKAT's proceedings" in Dubai against Elysium, "controlled by Sanjay Shah.").  Despite SKAT's very limited review of that "third party's database," SKAT has further claimed that the Elysium Documents contain business records relevant to this litigation, and SKAT sought to rely on them in its motion for summary judgment.  *See* ECF No. 817 at 44–51. In SKAT's motion, which the Court denied on November 20, 2023, SKAT argued that the Elysium Documents were admissible business records of Solo Capital Partners LLP, Telesto Markets LLP, Old Park Lane Capital PLC, and West Point Derivatives Ltd. (collectively, the "Solo Custodians"), that supported SKAT's allegations that Defendants' transactions were "fictitious."  *Id.* at 44, 46–47.

In support of the alleged link between the Solo Custodians and the Elysium entities, SKAT cited the Declaration of Rana Shashaa (the "Shashaa Declaration"), an employee of Deloitte Professional Services (Dubai) Limited.  ECF No. 824-115 (Shashaa Declaration); ECF No. 816 ¶ 9 n.14 (SKAT Rule 56.1 Statement citing Shashaa Declaration).  The Shashaa

---

[2]    The Elysium Documents were reviewed for privilege by representatives of Deloitte, and "Deloitte released material determined to be non-privileged to SKAT's legal representatives." ECF No. 824-115 at 8.

Declaration asserts that the Elysium Documents were obtained from Elysium's Dubai offices pursuant to a search order issued by the Dubai International Financial Court.  It identified the hard drives and other sources from which Deloitte obtained the Elysium Documents and stated that Deloitte "took appropriate steps to ensure that the original Electronic Material, Hardcopy Material and the imaged data were securely maintained throughout the search and imaging processes."  ECF No. 824-115.  The Shashaa Declaration also indicated attempts by Elysium representatives to conceal materials.  *Id.* at ¶ 15 ("On July 17, 2018, the First Respondent delivered to Deloitte four hard drives that a representative of the First Respondent had allegedly removed during the search of the Premises."); *id.* at ¶ 30 ("During the search of the Premises, the First Respondent failed to disclose that certain of its hardcopy documents were located at an off-site storage facility . . . .").  The Shashaa Declaration remains the only certification or affidavit SKAT has provided regarding the nature and origins of the Elysium Documents.

Although SKAT relies on the Shashaa Declaration to assert an alleged link between the Solo Custodians and Elysium, not one of the Solo Custodians appears in the Shashaa Declaration even a single time.  Sanjay Shah's name appears only once: "Deloitte began the forensic imaging process of the Network Share from Shah's laptop on the Premises and then took the laptop into its custody to continue forensically imaging the Network Share."  *Id.* at ¶ 10 n.1.  Nor did the Shashaa Declaration explain how or why business records of the Solo Custodians, which had offices in London, would be seized from the Dubai offices of the Elysium entities.

## ARGUMENT

SKAT's own motion for summary judgment and expert reports make clear that SKAT seeks to rely on the Elysium Documents for the truth of the matters asserted therein.  But neither the business records exception nor any other exception applies to allow SKAT to introduce these hearsay documents.

**A.**       **Defendants Preserve Their Authenticity Objection to the Elysium Documents**

SKAT claims the Elysium Documents are business records of the Solo Custodians, but it

fails to materially link the documents to the specific relevant entities, much less show they were

prepared with the care and precision required of business records.  Defendants preserve their

objection to the authenticity of the Elysium Documents and reserve the right to object at trial

should SKAT not lay sufficient foundation for the authenticity of the records when it attempts to

introduce one or more of them into evidence.

The Court has held that certain materials in the Elysium Documents are sufficiently

reliable for SKAT's experts to rely on them, but that is a separate matter from those materials, let

alone other materials from the Elysium Documents, being admitted into evidence.  The Elysium

Documents undeniably contain an enormous volume of material with no relevance to this

litigation, and the presence of pornographic videos—and similarly disturbing material—

undermines SKAT's claims that the Elysium Documents are a reliable repository for authentic

records from the Solo Custodians.  There is no telling where these materials came from.  Even

assuming certain documents in the Elysium Documents originated with the Solo Custodians, the

sprawling and chaotic character of the Elysium Documents gives no assurance that such

documents are a fair and accurate representation of the Solo Custodians' records.  SKAT has

provided no evidence regarding how the Solo Custodians may have created and maintained those

documents in the first place, and there is no assurance that any of these documents are legitimate

sources of the information they appear to reflect.

**B.**       **SKAT Seeks to Rely on the Elysium Documents for Their Truth**

Even if SKAT could authenticate the Elysium Documents as belonging to the Solo

Custodians (and it cannot), the documents would remain inadmissible as hearsay.  *See United*

*States v. Pedroza*, 750 F.2d 187, 199 (2d Cir. 1984) ("All of these statements were clearly

hearsay for they were out-of-court statements offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). They were not properly admitted since they were not within any exception or exclusion.").  In an attempt to avoid this hearsay problem, SKAT has claimed that it does not offer the Elysium Documents for their truth but "solely to show that even on the Solo Custodians' own account of what occurred, the defendant plans' purported share purchases still would not have resulted in any shareholdings because the purported trading was entirely circular."  ECF No. 817 at 47.

SKAT's argument conflates the legitimacy of the transactions at issue with the truth of the matters asserted in the Elysium Documents; SKAT relies on the truth of the Elysium Documents in alleging the transactions were not legitimate.  SKAT's argument fails, among other reasons, because it depends on the purported truth of the Elysium Documents to trace the alleged circular trading loops.  The different steps in the trading loops SKAT alleges connect only if one assumes the truth of the Elysium Documents, but assuming the truth of the documents means they can only properly be regarded as hearsay.  SKAT's expert reports also present numerous examples of SKAT relying on materials from the Elysium Documents for the truth of the matters asserted.  For instance, Graham Wade asserts that "Solo's position in its sub-custodians' futures omnibus accounts would net to zero . . . through the buying and selling of equal lots of futures in rapid succession" and "[i]t was Solo's practice to never hold open futures positions in its own sub-custodian omnibus accounts, and Solo put in systems in place to ensure this would not happen."  ECF No. 1053-4 ¶ 256 (citing ELYSIUM-01460217; ELYSIUM-02038702; ELYSIUM-01550252).  As another example, Bruce Dubinsky relies on the truth of Elysium materials to identify who allegedly controlled various entities.  ECF No. 1053-3 ¶ 106 (citing ELYSIUM-05443528 and ELYSIUM-05295222).  If the documents are admitted into

5

evidence, it is inevitable that the jurors will follow SKAT's experts and consider these documents for the truth of the matters asserted within them.

SKAT's summary judgment brief implicitly recognized the weakness of its claim that it was not relying on the Elysium Documents for their truth: SKAT devoted one short paragraph to addressing its claim that these "records are not subject to the rule against hearsay because SKAT does not offer them for their truth" but three full pages to arguing "these records are admissible under the business records exception to the rule against hearsay." *See* ECF No. 817 at 47–51.

### C. The Elysium Documents Are Not Admissible Under the Business Records Exception

The Elysium Documents fail to meet the conditions Rule 803(6) requires for the admission of business records.

The business records exception provides that a "record of an act, event, condition, opinion, or diagnosis" is "not excluded by the rule against hearsay" if:

> **(A)** the record was made at or near the time by — or from information transmitted by — someone with knowledge;
>
> **(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> **(C)** making the record was a regular practice of that activity;
>
> **(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> **(E)** the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

SKAT has not provided any of the information called for by Rule 803(6)(A)–(D), and it cannot now do so years after the close of discovery. As discussed above, the Shashaa Declaration says nothing at all about the Solo Custodians, much less that (a) someone with relevant knowledge made the documents at issue at the relevant time, (b) the Solo Custodians

6

kept such documents in the regular course of their business, or (c) producing such documents

was a regular practice of the Solo Custodians' business.  Accordingly, the Shashaa Declaration

does not meet the requirements of Rule 803(6), and SKAT has no other custodian, witness, or

certification to speak to those requirements.  In finding SKAT's experts could rely on certain

Elysium materials, the Court observed that "Sanjay Shah, who controlled the Solo custodians,

testified in another proceeding that Elysium Global (Dubai) Ltd. - the records of which were

contained in the Elysium Documents - formerly was known as Solo Capital (Dubai) Ltd."  ECF

No. 1119.  That testimony indicates some connection between the Solo Custodians and Elysium,

but Rule 803(6) requires more for the admission of hearsay documents.  Like the Shashaa

Declaration, Sanjay Shah's UK testimony does not provide any of the information called for by

Rule 803(6)(A)–(D).

Furthermore, Defendants have met Rule 803(6)(E) by showing that the source of the

information indicates a lack of trustworthiness: in short, the Elysium Documents are a mishmash

that includes pornography, collected from the computers of companies that were not involved in

the transactions at issue and were on a different continent than where the companies that were

involved (the Solo Custodians) had their offices.  And SKAT's whole theory is that Solo was

perpetrating a massive fraud.  That is hardly consistent with assuming that its records are

reliable.  As discussed below, in the cases that SKAT has cited where courts admitted business

records of companies involved in fraud, there were far more hallmarks of reliability than SKAT

has presented here.  In fact, SKAT's own filings reflect how the Elysium Documents are not

consistent or reliable.  For instance, SKAT's expert Graham Wade claims in his opening expert

report that the Solo Custodians "retroactively adjusted interest and fees on the original stock loan

agreement" for an example trade.  ECF No. 1053-4 ⁋ 260.  He also claims that a third-party

"account statement" contradicts "an internal Solo spreadsheet." *Id.* ¶¶ 263–64 (citing

ELYSIUM-01439314 and ELYSIUM-01439315).  SKAT's allegations that the Solo Custodians

altered documents to perpetrate fraud further undermine its claims that the Elysium Documents

are reliable.

SKAT alleges a congruence between certain documents in the Elysium Documents and

materials that Defendants themselves have produced.  *See* ECF No. 817 at 47 (claiming

information in the Elysium Documents "match deposits in bank records produced either by the

defendants or their respective banking institutions at which they maintain bank accounts"); *id.* at

49 ("the documents themselves reflect that that they were 'made at or near the time' of the act or

event 'by—or from information transmitted by—someone with knowledge'" (quoting Fed. R.

Evid. 803(6)).  But Defendants do not have to show that every single document amongst the

Elysium Documents is inaccurate to cast doubt on their overall trustworthiness.  Moreover,

allegations by counsel relying on the appearance of the documents in question are insufficient to

establish them as business records.  The cases SKAT has cited reflect far more corroboration of

the documents' trustworthiness than SKAT can offer here.

In *Curtis v. Perkins (In re Int'l Mgmt. Assocs., LLC)*, 781 F.3d 1262 (11th Cir. 2015), the

party offering the records had performed significant due diligence that supported the records'

trustworthiness.  As a court in this District described it:

> The trustee, himself a certified fraud examiner, testified how he had seized the
> debtor's files and reconstructed them to verify their accuracy. He satisfied himself
> as to their reliability by hiring an international accounting firm, subpoenaing
> records of the debtor's accounts from national banking institutions and cross-
> checking the debtor's records with records provided by investors and the banks,
> and interviewing the debtor's principals and employees, including the debtor's
> office manager, from whom he learned the procedures for creating the debtor's
> documents.

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 592 B.R. 513, 526 (Bankr. S.D.N.Y. 2018) (discussing factors relied on in *In re Int'l Mgmt. Assocs.*, 781 F.3d 1262, 1265 (11th Cir. 2015)).

The differences here are legion. SKAT did not obtain these documents from the Solo Custodians but from Elysium, located in Dubai. SKAT did not hire an international accounting firm to do an analysis or comparison—just a forensic extraction. SKAT did not interview principals or employees of the Solo Custodians to learn about their procedures for creating these documents. And *Madoff* itself is just as different from this case. In *Madoff*, unlike here, the documents were collected from the offices of the company at issue. In *Madoff*, unlike here, the parties "stipulated to the authenticity of most of the internal BLMIS [*i.e.* the debtor at issue] records." In *Madoff*, unlike here, forensic experts had "analyz[ed] and reconcile[ed]" the debtor's records. And in *Madoff*, unlike here, "the former BLMIS employees who were deposed explained the office procedures and how the BLMIS documents were created." *Id.* at 525–26. The fact that SKAT sought to rely on these cases, with such different facts from this litigation, shows just how strained and implausible its claim is that the Elysium Documents are reliable, admissible business records of the Solo Custodians

Controlling case law also shows that the Court should exclude the Elysium Documents. A party offering a document as a business record must have a "'custodian or other qualified witness' . . . testify that the document was 'kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the [record]" in order to "lay a proper foundation." *United States v. Williams*, 205 F.3d 23 (2d Cir. 2000) (quoting *United States v. Freidin*, 849 F.2d 716, 719–20 (2d Cir.1988)). As an illustration of this requirement, the court in *City of Almaty, Kazakhstan v. Ablyazov* excluded purported business

9

records as hearsay because the offering party had "not identified evidence that would lay a

proper foundation for admitting the" records.  2021 WL 5154110, at *10 (S.D.N.Y. Nov. 5,

2021).  In other cases, "the record's proponent introduced evidence, such as a sworn affidavit or

deposition testimony, that established that the record at issue was authentic and that it was

produced in the course of a regularly conducted activity of a business." *Id.* (internal quotation

marks omitted).  Likewise, the court in *Bermudez v. City of New York* sustained the defendants'

hearsay objection where the plaintiff failed to provide a custodian to lay the proper foundation.

2019 WL 136633, at *10–11 (E.D.N.Y. Jan. 8, 2019) (explaining record is "inadmissible hearsay

unless it is authenticated through a proper custodian and a proper evidentiary basis for admission

is established"); *see also, e.g.*, *Dzhabrailov v. Decker*, 2020 WL 2731966, at *8 n.4 (S.D.N.Y.

May 26, 2020) ("The documents submitted by Petitioner are inadmissible as they are not

authenticated and are hearsay concerning other documents which are not before the Court.").

Here, SKAT lacks any witness, certification, or other evidence to lay the necessary evidentiary

foundation for the Court to admit the Elysium Documents as business records of the Solo

Custodians.

This Court held in *Chevron Corp. v. Donziger* that a custodian with the relevant

knowledge may not be necessary "in all instances" to overcome a hearsay objection, but the

Elysium Documents are very different from the bank records that the Court admitted in *Chevron*.

974 F. Supp. 2d 362, 691 (S.D.N.Y. 2014) (Kaplan, J.).  There, the Court took judicial notice of

the uncontroversial facts that:

> banks routinely produce periodic statements for their customers and that those
> periodic statements reflect any and all deposits, withdrawals, debits and credits
> during stated periods of time. This is done in the regular course of business by bank
> employees with knowledge of the computer systems used to track customers'
> account activity.

*Id.*

In *Chevron*, there was no question that the bank statements at issue were prepared by a legitimate financial institution not involved in the alleged fraud. That is a far cry from this case in which SKAT's theory depends on the claim that the Solo Custodians created a variety of documents to perpetrate a fraud. This case also differs from *Chevron* in that, whereas in *Chevron* a witness credibly testified that he obtained the bank statements at issue directly from the bank, here SKAT obtained the Elysium Documents from Elysium's Dubai offices yet represents them as records of Solo Custodian transactions involving other third parties.

In short, SKAT cannot show the Elysium Documents are admissible as business records of the Solo Custodians.

### D.    No Other Hearsay Exception Applies

SKAT has not claimed any other hearsay exception applies to the Elysium Documents, and none does. SKAT may argue that the Elysium Documents are admissible under the residual exception of Rule 807, but the "Second Circuit has instructed that the residual exception is to be used 'very rarely, and only in exceptional circumstances.'" *Great Lakes Reinsurance (UK) SE v. Herzig*, 673 F.Supp.3d 432, 454 n.32 (S.D.N.Y. 2023) (quoting *Parsons v. Honeywell*, 929 F.2d 901, 907 (2d Cir. 1991)). Failing to meet the business records exception is not an exceptional circumstance. More fundamentally, "the standard for admissibility under the residual exception is whether the proffered evidence is 'particularly trustworthy.'" *Id.* at 458 (quoting *United States v. Dawkins*, 999 F.3d 767, 791 (2d Cir. 2021)). As discussed above, the Elysium Documents flunk that test.

### CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court grant Defendants' motion *in limine* and exclude from evidence the Elysium Documents.

Dated: New York, New York
August 15, 2024

Respectfully submitted,


 /s/ Peter Neiman
Boyd M. Johnson
Peter G. Neiman
Alan E. Schoenfeld
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
Boyd.Johnson@wilmerhale.com
Peter.Neiman@wilmerhale.com
Alan.Schoenfeld@wilmerhale.com

Andrew S. Dulberg
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6352
Andrew.Dulberg@wilmerhale.com

*Attorneys for Richard Markowitz, Jocelyn Markowitz, Avanix Management LLC Roth 401(K) Plan, Batavia Capital Pension Plan, Calypso Investments Pension Plan, Cavus Systems LLC Roth 401(K) Plan, Hadron Industries LLC Roth 401(K) Plan, RJM Capital Pension Plan, RJM Capital Pension Plan Trust, Routt Capital Pension Plan, Routt Capital Trust*


 /s/ Sharon L. McCarthy
Sharon L. McCarthy
KOSTELANETZ LLP
7 World Trade Center
250 Greenwich Street
34th Floor
New York, NY 10007
(212) 808-8100

12

smccarthy@kostelanetz.com

Nicholas S. Bahnsen
Daniel C. Davidson
KOSTELANETZ LLP
601 New Jersey Avenue, NW
Suite 260
Washington, DC 20001
(202) 875-8000
nbahnsen@kostelanetz.com
ddavidson@kostelanetz.com

*Attorneys for Defendants John van
Merkensteijn, III, Elizabeth van Merkensteijn,
Azalea Pensión Plan, Basalt Ventures LLC
Roth 401(K) Plan, Bernina Pension Plan,
Bernina Pension Plan Trust, Michelle
Investments Pension Plan, Omineca Pension
Plan, Omineca Trust, Remece Investments LLC
Pension Plan, Starfish Capital Management
LLC Roth 401(K) Plan, Tarvos Pension Plan,
Voojo Productions LLC Roth 401(K) Plan,
Xiphias LLC Pension Plan*


 /s/ David L. Goldberg
David L. Goldberg
Michael M. Rosensaft
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020
(212) 940-8800
david.goldberg@katten.com
michael.rosensaft@katten.com

*Attorneys for Defendants Robert Klugman,
RAK Investment Trust, Aerovane Logistics LLC
Roth 401K Plan, Edgepoint Capital LLC Roth
401K Plan, Headsail Manufacturing LLC Roth
401K Plan, The Random Holdings 401K Plan,
The Stor Capital Consulting LLC 401K Plan*


 /s/ Thomas E.L. Dewey
Thomas E.L. Dewey
Sean K. Mullen
DEWEY PEGNO & KRAMARSKY LLP

13

777 Third Avenue
37th Floor
New York, New York 10017
(212) 943-9000
tdewey@dpklaw.com
smullen@dpklaw.com

_/s/ Elliot R. Peters_____
Elliot R. Peters
Julia L. Allen
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111
(415) 962-7188
epeters@keker.com
jallen@keker.com

*Attorneys for Defendant Michael Ben-Jacob*

14