# Exhibit 10

# HANNES SNELLMAN

To:
**Belador Advisors UK Limited**
7th Floor, 20 Berkeley Square
London
W1J &EQ
United Kingdom

3 June 2013

## DANISH TAX OPINION

### 1    INTRODUCTION AND SCOPE

This opinion (the "**Opinion**") has been prepared at the request of Belador Advisors UK Limited.

This Opinion considers the Danish tax implications of certain transactions described below over Danish listed equities entered into by a United States pension plan ("**USPP**").

### 2    CERTAIN TERMS

References in this Opinion to a "business day" mean a day (other than a Saturday or Sunday) on which banks are open for general business in Copenhagen.

In addition, the "dividend approval date" means the date on which the relevant Danish company in question adopts a decision to distribute dividends (e.g. the date of the annual general meeting of the company) and "ex-dividend date" means the day immediately following a dividend approval date (or if this is not a business day, the next day which is a business day).

Furthermore, references in this Opinion to the "dividend record date" shall mean the day where the list of shareholders on record entitled to receive dividend is determined, i.e. the day falling three business days after the dividend approval date.

### 3    THE CONTEMPLATED TRANSACTIONS

USPP contemplates to enter into the following transactions (the "**Contemplated Transactions**"):

1. USPP will place an order with an inter-dealer broker (the "**Broker**") to sell a cash-settled single stock future over a Danish listed equity (the "**Danish Equity**") from the futures exchange (the "**Short Future**");

    USPP will enter into the Short Future before the ex-dividend date of the underlying Danish Equity. The Short Future will mature in the third week of the relevant month;

2. Furthermore, USPP will place an order with the Broker to either:

Hannes Snellman Advokatpartnerselskab
Amaliegade 15
1256 Copenhagen K, Denmark
Tel. +45 33 149 400  Fax +45 33 149 401
Business ID (CVR NO. 33387822)
Domicile Copenhagen
www.hannessnellman.com

HIGHLY CONFIDENTIAL
CONFIDENTIAL
Confidential Pursuant to Protective Order
KENNING00004MTTE/2175/1
SKSK00592879-0001
SKAT_MDL_001_00834549

(i) buy a physically-settled single stock future over the Danish Equity from the futures exchange (the "**Long Future**") before; or

(ii) buy (in an over-the-counter transaction ("**OCT**")) a Danish Equity which will be delivered into USPP's existing custodian account with its custodian (the "**Share Purchase**");

In both types of transactions, the purchase of the Danish Equity will take place prior to the ex-dividend date of the Danish Equity pursuant to an unconditional and legally binding agreement and the Danish Equity will be purchased on a cum dividend basis. Settlement may take place after dividend record date. In this context, an unconditional and legally binding agreement means an agreement which gives USPP the right to claim delivery of the Danish Equity and to claim damages in case of non-delivery. It also means an agreement which entails that the economic risk and reward on the Danish Equity is transferred from the seller to USPP with effect from (or before) the dividend approval date.

3. At maturity of the transaction, the Short Future may be closed out by cash settlement or by purchasing an offsetting contract. USPP will at such time sell the Danish Equity purchased under the Long Future or the Share Purchase (as applicable);

Accordingly, USPP will receive dividends on the Danish Equity if any such dividends are declared on the Danish Equity during USPP's ownership of the Danish Equity (the "**Danish Dividends**").

One or more of the following facts may apply when USPP (or the Gibraltarian Partnership (as defined below) enters into the Contemplated Transactions:

(a) Before USPP enters into the transaction described in step 1 - 3 above, USPP *may* establish a spot long cash position with its custodian an a similar spot cash position with other third party entities. The combined cash positions would be used to fund the entering into the Short Future and the Long Future/the Share Purchase (as applicable).

(b) After the dividend record date, USPP *may* lend out the Danish Equity during the ownership period, however, such stock lending activity will not take place in the period between the dividend approval date and the dividend record date of the Danish Equity.

(c) For the purpose of dealing more easily with execution and amalgamation of capital, two or more USPP acting together may enter into the Contemplated Transactions through a single Gibraltarian partnership (the "**Gibraltarian Partnership**"). The limited partnership agreement is attached to this Opinion as appendix 1.

(d) USPP may receive the Danish Dividends as a compensation payment from its custodian based on the fact that (a) the Share Purchase may settle on a T+4 settlement basis or (b) the settlement of the transfer of the Danish Equity under the Long Future or the Share Purchase (as applicable) may be delayed because of settlement failure.

(e) USPP may sell (on ex-dividend terms) the Danish Equity acquired under the Long Future or the Share Purchase (as applicable) before the dividend record date of the Danish Equity.

HIGHLY CONFIDENTIAL
CONFIDENTIAL
Confidential Pursuant to Protective Order
KENNING00004MTTE/2175/2
SKSK00592879-0002
SKAT_MDL_001_00834550

**4   ASSUMPTIONS**

For the purpose of this Opinion, we have assumed the following:

(a) USPP is a tax resident of the United States;

(b) USPP does not have a permanent establishment in Denmark;

(c) The Contemplated Transactions will be entered into at prevailing market prices;

(d) The ultimate counterparties to the Short Future and the Long Future will be undisclosed to USPP;

(e) USPP will not acquire more than 3% of the shares in a Danish issuer;

(f) USPP will be free to exercise its voting rights in respect of the Danish Equity (when acquired) and can sell, lend, pledge or otherwise dispose of the Danish Equity at any time during the ownership period;

(g) Any dividends received by USPP on the Danish Equity are not derived from the carrying on of a business from a US perspective by USPP or through an associated enterprise;

(h) USPP is comprised by Article 22 (2)(e) of the Denmark - US double tax treaty currently in force (the "**Denmark – US Tax Treaty**" or "**Treaty**") entailing that USPP is:

   (i) A legal person organised under the laws of the United States to provide pension or other similar benefits to employees, including self-employed individuals, pursuant to a plan; and that

   (ii) More than 50% of USPP's beneficiaries, members or participants are individuals resident in either the United States or Denmark;

(i) On purchase of the Danish Equity (as a result of either (i) the settlement of the Long Future or (ii) the Long Purchase), USPP will obtain unconditional ownership to the Danish Equity from (or before) the dividend approval date entailing that USPP obtains the right to receive the dividend declared on that date;

(j) The Danish Equity will be held by USPP through a custodian. USPP's ownership to the Danish Equity will be recorded with the custodian and, depending upon the custodian's and sub-custodian's other long and short positions, the Danish Securities Centre (VP Securities A/S);

(k) USPP's custodian's records will show that USPP is the legal owner of the Danish Equity on the dividend approval date and that the Equities are acquired on a cum dividend basis; and

(l) The Gibraltarian Partnership is, for US and Gibraltarian tax purposes, treated as a transparent entity.

3 (10)

HIGHLY CONFIDENTIAL
CONFIDENTIAL
Confidential Pursuant to Protective Order
KENNING00004MTTE/2175/3
SKSK00592879-0003
SKAT_MDL_001_00834551

## 5   OPINIONS

Based on the facts and assumptions set out Sections 3 and 0 above we are of this opinion that:

(a)   The Contemplated Transactions should not attract any Danish tax other than withholding tax on dividends distributed on the Danish Equity;

(b)   USPP should be entitled to claim a full refund of the Danish dividend withholding tax imposed on the Danish Dividends pursuant to the Denmark – US Tax Treaty and should be entitled thereto also if the Danish Equity is held through the Gibraltarian Partnership;

(c)   If the Long Future or the Share Purchase due to an agreed settlement in accordance with a T+4 settlement cycle or a settlement failure settles *after* the dividend record date, USPP should be able to claim a full refund of the Danish dividend withholding tax on received dividend compensation payments pursuant to the Denmark – US Tax Treaty provided that the conditions discussed in Section 7.1 below are met.

(d)   It should not affect the opinions expressed in (a) through (c) above whether or not USPP uses leverage to acquire the Danish Equity, cf. Section 3(a);

(e)   it should not affect the opinions expressed in (a) through (c) above whether or not USPP lends out the Danish Equity outside the period between the dividend approval date and the dividend record date of the Danish Equity; and

(f)   A sale of the Danish Equity (ex-dividend) after dividend approval date but before dividend record date should not change the opinions expressed in (a) through (c) above, provided however that USPP remains able to demonstrate its ownership to the Danish Equity on dividend approval date.

## 6   APPLICABLE DANISH TAX RULES

### 6.1   The Danish dividend regime

Dividends distributed by a Danish company are subject to tax in the hands of the person or entity which enjoys the ownership rights to the shares on the dividend approval date.

Danish tax law does not address the issue of ownership to dividends in situations where settlement of a share purchase is delayed until after the dividend record date due to settlement on a T+4 settlement basis in the OTC market or a settlement failure. To our knowledge, such situation has as of this date not given rise to any tax disputes in Denmark.

It follows however from general Danish tax principles that a person or entity which enjoys the economic and administrative (i.e. voting) rights over purchased shares must be recognized as the owner of such shares for Danish tax purposes irrespective of whether the ownership has been registered. This also means that the ownership to such shares must be recognized with effect from the date where the economic and administrative ownership rights are obtained pursuant to a legally binding agreement. The date of settlement is not decisive. This applies to shares purchased in the market as well as shares purchased OTC.

HIGHLY CONFIDENTIAL
CONFIDENTIAL
Confidential Pursuant to Protective Order
KENNING00004MTTE/2175/4
SKSK00592879-0004
SKAT_MDL_001_00834552

The classification of the investor's ownership rights under foreign law is not decisive for the Danish tax position. However, the Danish requirement that the investor must have obtained unconditional ownership to the shares can only be considered to be met if the investor is able to enforce the share purchase agreement under foreign (i.e. local) law by claiming delivery of the shares, or damages in case of non-delivery.

Thus, in determining whether an investor should be considered the owner of dividend distributed by a Danish company under Danish domestic tax law, the decisive factor is whether an unconditional and legally binding agreement has been entered into which gives the investor all economic and administrative rights over the shares with effect from the dividend approval date. The above applies regardless of whether leverage has been applied when purchasing the dividend paying shares.

### 6.2 Danish withholding tax on outbound dividends

If the holder of the dividend paying shares is a foreign person or entity, the dividend is as a point of departure subject to Danish withholding tax at source at the rate of 27 %.

However, certain exemptions exist according to which certain foreign shareholders may be entitled to a full or partial exemption from Danish dividend withholding tax.

A US resident pension fund is entitled to a full exemption from Danish dividend withholding tax if the pension fund satisfies the following conditions set out in Article 10(3)(c) and Article 22(2)(e) of the Denmark – US Tax Treaty:

(i) the US pension fund is a resident in the US for tax purposes;

(ii) the US pension fund is the beneficial owner of the dividend;

(iii) the dividends concerned are not derived from the carrying on of a business by the US pension fund or through an associated enterprise; and

(iv) the US pension fund is a legal entity organised under the laws of the United States to provide pension or other similar benefits to employees, including self-employed individuals, pursuant to a plan and more than 50 % of the pension fund's beneficiaries, members or participants are individuals resident in either the United States or Denmark.

A US pension fund which meets the above conditions will be entitled to a full exemption from Danish withholding tax on Danish source dividends.

The exemption is however not granted at source and the dividend distributing Danish entity must withhold tax from the dividend (at the standard rate of 27 %) irrespective of the exemption. To obtain the exemption, a US pension fund must file a refund claim with the Danish tax authorities as described in Section 6.5 below.

### 6.3 The condition of beneficial ownership

As transpires from the above, the entitlement to exemption from Danish dividend withholding tax pursuant to the Denmark – US Tax Treaty requires, inter alia, that the US pension fund qualifies as the beneficial owner of the dividend.

The concept of beneficial ownership does not exist under Danish domestic law and no formal distinction is thus made under Danish law between beneficial and legal ownership to shares and dividends received thereon.

5 (10)

HIGHLY CONFIDENTIAL
CONFIDENTIAL
Confidential Pursuant to Protective Order
KENNING00004MTTE/2175/5
SKSK00592879-0005
SKAT_MDL_001_00834553

The Danish tax authorities have however questioned a number of dividend withholding tax claims on the ground that the foreign dividend recipient is not the beneficial owners of the dividend within the meaning of the treaty invoked and therefore is not entitled to treaty benefits. Such claims have however only been raised in cases where dividends have been paid to an intermediary parent/holding company which is controlled by an investor in an offshore jurisdiction. The Danish tax authorities have taken the position that such holding companies must be regarded as pure conduit companies which cannot be regarded as the beneficial owner of the dividends received.

The Danish tax authorities have so far based their interpretation of the beneficial ownership condition on the guidance provided in OECD commentary to the dividend and interest provisions in the OECD model tax treaty.

To our knowledge, the Danish tax authorities have as of this date not denied exemption from Danish withholding tax on dividends paid to other entities than intermediary holding companies.

A recent ruling issued by the Swiss Federal Administrative Tribunal strongly suggests that the treaty condition of beneficial owner cannot be applied to deny exemption from dividend withholding tax on the ground that the dividend recipient has entered into a derivative transaction over the concerned shares.

### 6.4 Investments made through a foreign partnership

Article 4(1)(d) of the Denmark – US Tax Treaty contains a special provision which provides that income derived by a US tax resident from Danish sources through another entity should be deemed to be derived by the US tax resident for the purpose of the Treaty if the income is treated as being derived directly by the US tax resident for US income tax purposes.

This provision entails that a US investor may claim relief from Danish dividend withholding tax pursuant to the Treaty in situations where Danish equities are held through a partnership in a third state which is transparent for US tax purposes.

### 6.5 Procedure for relief from Danish dividend withholding tax

The Danish withholding tax regime is a refund regime.

A Danish dividend distributing company is obliged to withhold tax from dividend distributed unless the dividend is paid out to certain qualifying shareholders (i.e. corporate shareholders residing in an EU or treaty state which hold at least 10% of the shares issued and certain Danish pension and investment funds). Tax is to be withheld at the rate of 27 %.

This regime entails that a US pension fund, in order to obtain exemption from Danish dividend withholding tax pursuant to the Denmark – US Tax Treaty, must file a claim for refund of the tax withheld with the Danish tax authorities.

A special form exist - form # 06.003 - which must be used for purpose of reclaiming Danish withholding tax. The form is attached as appendix 2 to this Opinion. The form is also available from the Danish tax authorities' website.

Form # 06.003 provides that a competent authority must certify that the beneficial owner seeking refund of Danish withholding tax is covered by the double tax treaty being invoked by the beneficial owner.

HIGHLY CONFIDENTIAL
CONFIDENTIAL
Confidential Pursuant to Protective Order
KENNING00004MTTE/2175/6
SKSK00592879-0000
SKAT_MDL_001_00834554

According to the Danish tax authorities, the U.S. tax authorities have in a number of cases refused to sign the Danish form. In such event, the Danish tax authorities will require - and accept - a "letter of U.S. residency certification" - form 6166 - which is available from the website of the US tax authorities.

A claim for refund of Danish withholding tax by a US pension fund must also be accompanied by documentation evidencing that the US pension fund satisfies the conditions stipulated in Article 22(2)(e) of the Denmark – US Tax Treaty.

A right to interest compensation will arise if the withholding tax amount is not refunded by the Danish tax authorities within six months from the filing of the claim. In such event interest compensation is offered at a rate of 0.5 % per month for the time exceeding the six month period.

### 6.6 Danish tax treatment of capital gains on equities

Foreign shareholders are unconditionally exempt from Danish taxation of capital gains on Danish equities. Consequently, neither the holding nor the sale of Danish equities by a foreign shareholder will give rise to Danish capital gains taxation.

This also means that the entering into a stock loan transaction over Danish equities will not give rise to capital gains taxation of the foreign lender or foreign borrower of the stock.

### 6.7 Danish tax treatment of futures over Danish equities

A stock futures transaction over Danish equities does not give rise to Danish taxation of a foreign resident party to the transaction.

### 6.8 Transfer taxes

No stamp duty or other Danish transfer taxes apply to any transaction over Danish equities or derivatives which Danish equities as the underlying asset.

## 7   ANALYSIS

### 7.1 Danish dividend withholding tax

It is our understanding that USPP prior to the ex-dividend date and no later than the dividend approval date will enter into an unconditional and legally binding agreement to purchase the Danish Equity. By unconditional and legally binding agreement we mean a contract which gives USPP an enforceable right to claim delivery of the Danish Equity and to claim damages in case of non-delivery. It also means an agreement which entails that the economic risk and reward on the Danish Equity, including dividends, is transferred from the seller to USPP with effect from (or before) the dividend approval date.

It is further our understanding that USPP would only lend out or sell the Danish Equity after the relevant dividend approval date with no dividend rights attached.

Based on these assumptions, we believe that USPP from a Danish domestic tax law perspective must be considered the recipient of the dividend declared on the Danish Equity on dividend approval date.

We find this to be true also in the event that USPP's ownership rights to the Danish Equity are not duly registered with the Danish Securities Center (VP Securities) on dividend record date because of a settlement failure or because the Share Purchase is settled on a T+4 settle-

7 (10)

ment basis in the OTC market and USPP as a result thereof receives a dividend compensation payment instead of a dividend payment from the dividend paying Danish company. We find that the compensation must be considered an onpayment to USPP of the dividend declared on the Danish Equity on dividend approval date which according to the purchase agreement belongs to USPP.

The above conclusions are based on our interpretation and application of the general Danish tax principles described in Section 6.1 above which entail that an investor for Danish tax purposes must be recognized as the owner of shares and any dividend distributed thereon with effect from the day where the investor obtains unconditional ownership to the shares and any dividend distributed thereon pursuant to a legally binding agreement. The registration of the ownership is not decisive. The classification of the ownership under foreign law is not decisive either. However, the requirement that the investor must have unconditional ownership to the shares can only be considered to be met if the investor is able to legally enforce the purchase agreement under foreign (i.e. local) law.

We further believe that USPP should be entitled to a full exemption from Danish withholding tax if the conditions set out in Article 10(3)(c) and Article 22(2)(e) of the Denmark – US Tax Treaty are met. Based on the facts and assumptions set out in Sections 3 and 0 above, we find that USPP must be considered to meet these conditions, including the condition of beneficial ownership

In relation to the condition set out in Denmark - US Tax Treaty, which stipulates that the dividends must not be derived from the carrying out of a business by the pension fund or through an associated enterprise, we note that we find this condition to be met from a Danish perspective.

In relation to the condition of beneficial ownership we note that:

- USPP will prior to the ex-dividend enter into a legally binding agreement which entails that the economic risk and reward on the Danish Equity, including dividends, is transferred to USPP with effect from (or before) the dividend approval date;

- USPP will not be legally obligated to pay any portion of the Danish Dividend to any person;

- the price of the Short Future will take into account a proportion of the expected Danish Dividend in calculating the strike price of the Short Future but no adjustment will be made if the actual dividend amount is more or less than the expected dividend amount; and

- the obligations under the Short Future exist and must be fulfilled by USPP regardless of whether USPP acquires the Danish Equity.

Under these circumstances, we find that USPP should be regarded as the beneficial owner of the Danish Dividends for the purpose of the Denmark – US Tax Treaty. Consequently we find that USPP should be entitled to full exemption from Danish withholding tax on the Danish Dividends.

In order obtain recognition of USPP as the recipient of the Danish Dividend under Danish domestic tax law and to obtain exemption from Danish withholding tax pursuant to the Denmark – US Tax Treaty, it is however crucial that USPP can provide the following

HIGHLY CONFIDENTIAL    KENNING00004MTTE/2175/8
CONFIDENTIAL    SKSK00592879-0000
Confidential Pursuant to Protective Order    SKAT_MDL_001_00834556

(a)  Documentation that the Danish Equity was purchased pursuant to an unconditional and legally binding agreement entered into prior to the ex-dividend date and that the Danish Equity according to such agreement was purchased on a cum dividend basis. Further, USPP must be able to document that the Danish Equity has subsequently been delivered, ideally only a few days dividend record date.

(b)  A claim for refund to the Danish tax authorities which is accompanied by documentation showing that USPP is a tax resident of the United States and further showing that the conditions stipulated in Article 22(3)(e) of the Danish – US Tax Treaty are met. This means that USPP must submit documentation showing that USPP is a legal entity organized under US laws for the purposes of providing pension benefits to employees or self-employed individuals and that more than 50% of its members or beneficiaries will be individuals residing in United States or in Denmark (i.e. Form 6166 – see above).

With respect to the documentation mentioned in (a) we believe it should suffice to provide 1) a trade confirm which confirms that the Danish Equity has been purchased by USPP prior to the ex-dividend date, and 2) a statement from a third party which confirms that the Danish Equity has subsequently been delivered to USPP, i.e. registered in the name of USSP or the relevant custodian / sub-custodian. This assessment is based on our understanding that a purchase of listed shares prior to the ex-dividend date according to market practice is deemed to entail a transfer of all ownership rights, including the right to receive dividend declared on the shares after the ex-dividend date. It should therefore be sufficient to document that the Danish Equity has been purchased prior to the ex-dividend date and that the Danish Equity has subsequently been delivered. The fact that USPP may apply leverage to acquire the Danish Equity does not affect the above conclusions.

### 7.2 Investments made through the Gibraltarian Partnership

As described above under 6.4, a US investor may claim relief from Danish dividend withholding tax pursuant to the Denmark – US Tax Treaty in a situation where the Danish equities are held by the US investor through a partnership in a third state which is transparent for US tax purposes.

Therefore, as the Gibraltarian Partnership is deemed to be transparent for US tax purposes, we come to the conclusion that USPPs which are investing through the said partnership should be entitled to claim full exemption from Danish dividend withholding tax pursuant to the Treaty.

### 7.3 Other Danish tax implications of the contemplated transactions

No other Danish taxes should apply to the Contemplated Transactions and the Contemplated Transactions should therefore not give rise to any other Danish tax implications than the withholding and subsequent claim for refund of Danish tax on the Danish Dividend.

For the avoidance of doubt, it is noted that the levy of bank charges or similar charges resulting from the registration of title with the Danish Securities Centre or equivalent foreign depository is not considered in this Opinion.

HIGHLY CONFIDENTIAL
CONFIDENTIAL
Confidential Pursuant to Protective Order
KENNING00004MTTE/2175/9
SKSK00592879-0009
SKAT_MDL_001_00834557

## 8  QUALIFICATIONS

This Opinion is subject to the following qualifications:

(a) We are admitted to practice in Denmark. We have made such examinations of the laws of Denmark as currently applied by the state of Denmark and as in our judgement are necessary or appropriate for the purpose of this Opinion. We have made no enquiry into the laws of any jurisdiction other than those of Denmark and no opinion is expressed or implied with respect to such laws; and

(b) Even though USPP in our opinion should be regarded as the beneficial owner of the Danish Dividend, it is not possible to fully exclude that the Danish tax authorities would prevail in an attempt to deny USPP exemption from Danish withholding tax on the basis of a beneficial ownership argument. We believe, however, that the longer the Danish Equity is held by USPP, the less this risk should be.

(c) The Opinion does not consider the potential tax implication for any counterparties to the contemplated transactions.

## 9  GOVERNING LAW AND JURISDICTION

This Opinion shall be governed and construed in accordance with Danish law and any dispute arising out of or in connection with this Opinion shall be subject to the exclusive jurisdictions of the Danish courts.

## 10  RELIANCE

This Opinion is rendered solely for your benefit and may only be relied upon by you in the very matter and context specified herein.

This Opinion may not, without our prior written consent, be disclosed to any other person save that it may be disclosed without such consent to your legal counsel.

We are not assuming any obligation to notify you of any changes to the opinions expressed herein as a result of any facts or circumstances that may come to our attention in the future or as a result of any change in the laws of Denmark which may hereafter occur.

\*\*\*

Nikolaj Bjørnholm              Anne Becker-Christensen

HIGHLY CONFIDENTIAL
CONFIDENTIAL
Confidential Pursuant to Protective Order
KENNING0000MTTE/2175/10
SKSK00592879-0010
SKAT_MDL_001_00834558