# Exhibit 17

Message

| | |
|---|---|
| **From**: | Matthew Stein [mstein@argremgt.com] |
| **Sent**: | 10/12/2012 3:10:29 PM |
| **To**: | Ben-Jacob, Michael [/O=KAYESCHOLER/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=Ben_m] |
| **CC**: | Richard Markowitz [rmarkowitz@argremgt.com]; John H. van Merkensteijn, III [jhvm@argremgt.com]; Jérôme LHOTE [jlhote@argremgt.com]; Adam Larosa [alarosa@argremgt.com] |
| **Subject**: | FW: Tax Reclaim Advisory Services Agreements |
| **Attachments**: | 7. Tax Reclaim Advisory Services Agreement - California Catalog Company Pension Plan.doc; 7. Tax Reclaim Advisory Services Agreement - Michelle Investments Pension Plan Trust.doc; 7. Tax Reclaim Advisory Services Agreement - Xiphias LLC Trust.doc; 7. Tax Reclaim Advisory Services Agreement - Lion Advisory Inc Pension Plan.doc; 7. Tax Reclaim Advisory Services Agreement - Mill River Capital Management Pension Plan.doc; 7. Tax Reclaim Advisory Services Agreement - Delvian LLC Pension Plan.doc |

Michael,

Please forward to Woody

MICHAEL
BEN-JACOB

EXHIBIT 4498

10 - 11 - 2021

**From:** Raj Shah [mailto:Raj.Shah@solo.com]
**Sent:** Friday, October 12, 2012 8:04 AM
**To:** Matthew Stein
**Cc:** Graham Horn; Sanjay Shah
**Subject:** Tax Reclaim Advisory Services Agreements

Hi Matt,

Attached are the agreements under which our Cayman entity, Ganymede Cayman Limited, will recover fees.

We have used the same agreement for all other clients. Nothing controversial.

If acceptable then we will sign and issue invoices as appropriate.

Kind regards,
Raj

This email message has been delivered safely and archived online by Mimecast.
For more information please visit http://www.mimecast.com

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER    **WH_MDL_00219494**

# TAX RECLAIM ADVISORY SERVICES AGREEMENT

Between

**Ganymede Cayman Limited**

**And**

**California Catalog Company Pension Plan**

Dated

**………………………………..**

1

WH_MDL_00219495

**THIS TAX RECLAIM ADVISORY SERVICES AGREEMENT** is made as of the date on the front of this Agreement.

**BETWEEN**

(1) **CALIFORNIA CATALOG COMPANY PENSION PLAN,** a pension plan registered in the State of Connecticut, United States of America, whose address is 212 Cognewaugh Road, Cos Cob, CT 06807, United States of America (**Client**); and

(2) **GANYMEDE CAYMAN LIMITED** a limited liability company registered in the Cayman Islands with registration number HL-242030 and whose registered office is at Appleby Trust (Cayman) Ltd., Clifton House, 75 Fort Street, PO Box 1350, Grand Cayman KY1-1108, Cayman Islands (**Advisor**),

together the *Parties* and each a *Party*.

**IT IS AGREED**:

In this Agreement the following definitions will apply:

| | |
|---|---|
| *Business Day* | means any day when banks are open for business in London; |
| *Costs* | means the Refund Agent Fees and the Initial Fees (if any); |
| *Fee* | means the fee equal to the Relevant Percentage multiplied by the Net Refund Amount; |
| *Indemnity* | has the meaning given to it in Clause 5; |
| *Indemnity Percentage* | means the percentage factor applicable to the Refund Amount as listed in Column 5 (*Indemnity Percentage*) of the table in the Schedule; |
| *Initial Fees* | means the  a fee of €100,000 payable to the Advisor in two installments as follows (i) €50,000 payable on receipt of the Client's first Refund (irrespective of jurisdiction of the Refund); and (ii) €50,000 payable on receipt of the Client's second Refund (irrespective of jurisdiction of Refund); |
| *Jurisdiction* | means the jurisdiction in relation to which tax reclaim services are provided, as listed in Column 1 (*Jurisdiction*) of the table in the Schedule; |
| *Net Refund Amount* | means the Refund Amount less any Costs; |
| *Refund* | means dividend withholding tax refunds in aggregate equal to the Refund Amount and which are processed by the Refund Agent; |
| *Refund Agent* | means the tax reclaim agent as listed in Column 2 (*Refund Agent*) of the table in the Schedule; |
| *Refund Agent Fees* | means any amounts payable to the Refund Agent in relation to the collection of the Refund; |

2

WH_MDL_00219496

| *Refund Amount* | means the amount as listed in Column 3 (*Refund Amount*) of the table in the Schedule; |
| *Relevant Percentage* | means the percentage factor applicable to the Net Refund Amount as listed in Column 4 (*Relevant Percentage*) of the table in the Schedule; and |
| *Services* | means tax reclaim advisory services provided by the Advisor, in respect of the relevant Jurisdiction. |

1.    It is agreed that, in accordance with this Agreement, the Advisor will carry out the Services for and on behalf of the Client.

2.    In consideration for carrying out Services for and on behalf of the Client, the Fee is payable by the Client to the Advisor within two (2) Business Days of receipt by the Client of the Refund:

    2.1    the Fee is payable by the Client to the Advisor in respect of the Services provided by the Advisor;

    2.2    if the actual Refund is less than the Refund Amount, then the Fee will be applied to such lower amount. If subsequently a further Refund is made, then further Fees will be paid accordingly; and

    2.3    the Client hereby agrees not to transfer any part of the Refund Amount out of the Client's cash account (*at its custodian*) until such time that the Fee has been settled.

3.    The Client appoints the Advisor on the date of this Agreement and instructs the Advisor to carry out the Services for and on behalf of the Client.

4.    The details listed in the Schedule may be varied from time to time as agreed between the Parties.

5.    The Client undertakes to indemnify the Advisor fully against all claims, losses, costs, expenses, damages or liability which it sustains or incurs as a result of providing the Services on behalf of the Client (*Indemnity*). The Indemnity will not (in aggregate) exceed the Refund Amount multiplied by the Indemnity Percentage.

6.    The terms of this Agreement shall not be construed so as to affect or prejudice any other right or remedy available to the Parties to this Agreement, above and beyond that contained in this Agreement, in the event of a breach of this Agreement by any Party.

7.    No neglect, delay or indulgence on the Client's or Advisor's part in enforcing the terms of this Agreement shall be construed as a waiver thereof.

3

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00219497

8.    Any notice, demand or other communication in connection with this Agreement between the Client and the Advisor:

    8.1    may be served personally, by electronic means or by first class post to the relevant Party at the address at the front of this Agreement (or such other address as it shall previously have been notified to the other Party); and

    8.2    notices shall be deemed to have been served three Business Days after having been posted, or if sent by facsimile or other electronic means, one Business Day after transmission.

9.    Any dispute, controversy, proceedings, or claim of whatever nature arising, out of or relating to this Agreement (including non-contractual disputes or claims) or breach of its terms shall be governed by, and this Agreement shall be construed in accordance with, English law. The Courts of England and Wales shall have exclusive jurisdiction to settle any dispute arising out of or in connection with this Agreement or its formation (including non-contractual disputes or claims).

10.    Termination of this Agreement, however caused, shall be without prejudice to any rights or liabilities accrued at the date of termination.

11.    A person who is not a Party to this Agreement shall not have any rights under or in connection with it.

12.    This Agreement may only be amended in writing and signed for and on behalf of the Parties to it.

13.    This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute a duplicate original, but all the counterparts shall together constitute the one Agreement.

This document has been executed as an Agreement and is delivered and takes effect on the date stated at the beginning of it.

4

**EXECUTED as an AGREEMENT** by
**CALIFORNIA CATALOG COMPANY PENSION
PLAN**,
acting by

---------------------------------------                    ---------------------------------------
)                                                          )
)                                                          )
)                                                          )
---------------------------------------                    ---------------------------------------
Authorised Signatory                                       Authorised Signatory

**EXECUTED as an AGREEMENT** by
**GANYMEDE CAYMAN LIMITED**,

---------------------------------------
Director

5

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER                **WH_MDL_00219499**

## SCHEDULE

| Jurisdiction | Refund Agent | Refund Amount | Relevant Percentage | Indemnity Percentage |
|---|---|---|---|---|
| Denmark | Acupay System LLC | DKK 3,415,500 | 67.5% | 100% less the Relevant Percentage |

This schedule is accurate as at 12 October 2012. It may be amended from time to time and any amendment to this Schedule will be annotated by a reference to the date of amendment, the changes effected and the signature of an authorised signatory of the Advisor.

6

# TAX RECLAIM ADVISORY SERVICES AGREEMENT

Between

**Ganymede Cayman Limited**

**And**

**Michelle Investments Pension Plan Trust**

Dated

**……………………………..**

1

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00219501

**THIS TAX RECLAIM ADVISORY SERVICES AGREEMENT** is made as of the date on the front of this Agreement.

**BETWEEN**

(1) **MICHELLE INVESTMENTS PENSION PLAN TRUST,** a pension plan registered in the State of New York, United States of America, whose address is 40 West 57th Street, Floor 20, New York, NY 10019, United States of America (*Client*); and

(2) **GANYMEDE CAYMAN LIMITED** a limited liability company registered in the Cayman Islands with registration number HL-242030 and whose registered office is at Appleby Trust (Cayman) Ltd., Clifton House, 75 Fort Street, PO Box 1350, Grand Cayman KY1-1108, Cayman Islands (*Advisor*),

together the *Parties* and each a *Party*.

**IT IS AGREED**:

In this Agreement the following definitions will apply:

| | |
|---|---|
| *Business Day* | means any day when banks are open for business in London; |
| *Costs* | means the Refund Agent Fees and the Initial Fees (if any); |
| *Fee* | means the fee equal to the Relevant Percentage multiplied by the Net Refund Amount; |
| *Indemnity* | has the meaning given to it in Clause 5; |
| *Indemnity Percentage* | means the percentage factor applicable to the Refund Amount as listed in Column 5 (*Indemnity Percentage*) of the table in the Schedule; |
| *Initial Fees* | means the  a fee of €100,000 payable to the Advisor in two installments as follows (i) €50,000 payable on receipt of the Client's first Refund (irrespective of jurisdiction of the Refund); and (ii) €50,000 payable on receipt of the Client's second Refund (irrespective of jurisdiction of Refund); |
| *Jurisdiction* | means the jurisdiction in relation to which tax reclaim services are provided, as listed in Column 1 (*Jurisdiction*) of the table in the Schedule; |
| *Net Refund Amount* | means the Refund Amount less any Costs; |
| *Refund* | means dividend withholding tax refunds in aggregate equal to the Refund Amount and which are processed by the Refund Agent; |
| *Refund Agent* | means the tax reclaim agent as listed in Column 2 (*Refund Agent*) of the table in the Schedule; |

2

WH_MDL_00219502

| *Refund Agent Fees* | means any amounts payable to the Refund Agent in relation to the collection of the Refund; |
|---|---|
| *Refund Amount* | means the amount as listed in Column 3 (*Refund Amount*) of the table in the Schedule; |
| *Relevant Percentage* | means the percentage factor applicable to the Net Refund Amount as listed in Column 4 (*Relevant Percentage*) of the table in the Schedule; and |
| *Services* | means tax reclaim advisory services provided by the Advisor, in respect of the relevant Jurisdiction. |

1.  It is agreed that, in accordance with this Agreement, the Advisor will carry out the Services for and on behalf of the Client.

2.  In consideration for carrying out Services for and on behalf of the Client, the Fee is payable by the Client to the Advisor within two (2) Business Days of receipt by the Client of the Refund:

    2.1  the Fee is payable by the Client to the Advisor in respect of the Services provided by the Advisor;

    2.2  if the actual Refund is less than the Refund Amount, then the Fee will be applied to such lower amount. If subsequently a further Refund is made, then further Fees will be paid accordingly; and

    2.3  the Client hereby agrees not to transfer any part of the Refund Amount out of the Client's cash account (*at its custodian*) until such time that the Fee has been settled.

3.  The Client appoints the Advisor on the date of this Agreement and instructs the Advisor to carry out the Services for and on behalf of the Client.

4.  The details listed in the Schedule may be varied from time to time as agreed between the Parties.

5.  The Client undertakes to indemnify the Advisor fully against all claims, losses, costs, expenses, damages or liability which it sustains or incurs as a result of providing the Services on behalf of the Client (*Indemnity*). The Indemnity will not (in aggregate) exceed the Refund Amount multiplied by the Indemnity Percentage.

6.  The terms of this Agreement shall not be construed so as to affect or prejudice any other right or remedy available to the Parties to this Agreement, above and beyond that contained in this Agreement, in the event of a breach of this Agreement by any Party.

3

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

7.      No neglect, delay or indulgence on the Client's or Advisor's part in enforcing the terms of this Agreement shall be construed as a waiver thereof.

8.      Any notice, demand or other communication in connection with this Agreement between the Client and the Advisor:

    8.1     may be served personally, by electronic means or by first class post to the relevant Party at the address at the front of this Agreement (or such other address as it shall previously have been notified to the other Party); and

    8.2     notices shall be deemed to have been served three Business Days after having been posted, or if sent by facsimile or other electronic means, one Business Day after transmission.

9.      Any dispute, controversy, proceedings, or claim of whatever nature arising, out of or relating to this Agreement (including non-contractual disputes or claims) or breach of its terms shall be governed by, and this Agreement shall be construed in accordance with, English law. The Courts of England and Wales shall have exclusive jurisdiction to settle any dispute arising out of or in connection with this Agreement or its formation (including non-contractual disputes or claims).

10.     Termination of this Agreement, however caused, shall be without prejudice to any rights or liabilities accrued at the date of termination.

11.     A person who is not a Party to this Agreement shall not have any rights under or in connection with it.

12.     This Agreement may only be amended in writing and signed for and on behalf of the Parties to it.

13.     This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute a duplicate original, but all the counterparts shall together constitute the one Agreement.

This document has been executed as an Agreement and is delivered and takes effect on the date stated at the beginning of it.

4

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

**EXECUTED as an AGREEMENT** by
**MICHELLE INVESTMENTS PENSION PLAN
TRUST**,
acting by

---------------------------------------                    ---------------------------------------
)                                                          )
)                                                          )
)                                                          )
---------------------------------------                    ---------------------------------------
Authorised Signatory                                       Authorised Signatory

**EXECUTED as an AGREEMENT** by
**GANYMEDE CAYMAN LIMITED**,

---------------------------------------
Director

5

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

## SCHEDULE

| Jurisdiction | Refund Agent | Refund Amount | Relevant Percentage | Indemnity Percentage |
|---|---|---|---|---|
| Denmark | Acupay System LLC | DKK 4,812,750 | 67.5% | 100% less the Relevant Percentage |

This schedule is accurate as at 12 October 2012. It may be amended from time to time and any amendment to this Schedule will be annotated by a reference to the date of amendment, the changes effected and the signature of an authorised signatory of the Advisor.

6

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

# TAX RECLAIM ADVISORY SERVICES AGREEMENT

**Between**

**Ganymede Cayman Limited**

**And**

**Xiphias LLC Trust**

**Dated**

**………………………………..**

1

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

**THIS TAX RECLAIM ADVISORY SERVICES AGREEMENT** is made as of the date on the front of this Agreement.

**BETWEEN**

(1) **XIPHIAS LLC TRUST,** a pension plan registered in the State of New York, United States of America, whose address is 40 West 57th Street, Floor 20, New York, NY 10019, United States of America (*Client*); and

(2) **GANYMEDE CAYMAN LIMITED** a limited liability company registered in the Cayman Islands with registration number HL-242030 and whose registered office is at Appleby Trust (Cayman) Ltd., Clifton House, 75 Fort Street, PO Box 1350, Grand Cayman KY1-1108, Cayman Islands (*Advisor*),

together the *Parties* and each a *Party*.

**IT IS AGREED**:

In this Agreement the following definitions will apply:

| | |
|---|---|
| *Business Day* | means any day when banks are open for business in London; |
| *Costs* | means the Refund Agent Fees and the Initial Fees (if any); |
| *Fee* | means the fee equal to the Relevant Percentage multiplied by the Net Refund Amount; |
| *Indemnity* | has the meaning given to it in Clause 5; |
| *Indemnity Percentage* | means the percentage factor applicable to the Refund Amount as listed in Column 5 (*Indemnity Percentage*) of the table in the Schedule; |
| *Initial Fees* | means the  a fee of €100,000 payable to the Advisor in two installments as follows (i) €50,000 payable on receipt of the Client's first Refund (irrespective of jurisdiction of the Refund); and (ii) €50,000 payable on receipt of the Client's second Refund (irrespective of jurisdiction of Refund); |
| *Jurisdiction* | means the jurisdiction in relation to which tax reclaim services are provided, as listed in Column 1 (*Jurisdiction*) of the table in the Schedule; |
| *Net Refund Amount* | means the Refund Amount less any Costs; |
| *Refund* | means dividend withholding tax refunds in aggregate equal to the Refund Amount and which are processed by the Refund Agent; |
| *Refund Agent* | means the tax reclaim agent as listed in Column 2 (*Refund Agent*) of the table in the Schedule; |
| *Refund Agent Fees* | means any amounts payable to the Refund Agent in relation to the collection of the Refund; |

2

| | |
|---|---|
| ***Refund Amount*** | means the amount as listed in Column 3 (*Refund Amount*) of the table in the Schedule; |
| ***Relevant Percentage*** | means the percentage factor applicable to the Net Refund Amount as listed in Column 4 (*Relevant Percentage*) of the table in the Schedule; and |
| ***Services*** | means tax reclaim advisory services provided by the Advisor, in respect of the relevant Jurisdiction. |

1.   It is agreed that, in accordance with this Agreement, the Advisor will carry out the Services for and on behalf of the Client.

2.   In consideration for carrying out Services for and on behalf of the Client, the Fee is payable by the Client to the Advisor within two (2) Business Days of receipt by the Client of the Refund:

   2.1   the Fee is payable by the Client to the Advisor in respect of the Services provided by the Advisor;

   2.2   if the actual Refund is less than the Refund Amount, then the Fee will be applied to such lower amount. If subsequently a further Refund is made, then further Fees will be paid accordingly; and

   2.3   the Client hereby agrees not to transfer any part of the Refund Amount out of the Client's cash account (*at its custodian*) until such time that the Fee has been settled.

3.   The Client appoints the Advisor on the date of this Agreement and instructs the Advisor to carry out the Services for and on behalf of the Client.

4.   The details listed in the Schedule may be varied from time to time as agreed between the Parties.

5.   The Client undertakes to indemnify the Advisor fully against all claims, losses, costs, expenses, damages or liability which it sustains or incurs as a result of providing the Services on behalf of the Client (***Indemnity***). The Indemnity will not (in aggregate) exceed the Refund Amount multiplied by the Indemnity Percentage.

6.   The terms of this Agreement shall not be construed so as to affect or prejudice any other right or remedy available to the Parties to this Agreement, above and beyond that contained in this Agreement, in the event of a breach of this Agreement by any Party.

7.   No neglect, delay or indulgence on the Client's or Advisor's part in enforcing the terms of this Agreement shall be construed as a waiver thereof.

3

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER     WH_MDL_00219509

8.    Any notice, demand or other communication in connection with this Agreement between the Client and the Advisor:

    8.1    may be served personally, by electronic means or by first class post to the relevant Party at the address at the front of this Agreement (or such other address as it shall previously have been notified to the other Party); and

    8.2    notices shall be deemed to have been served three Business Days after having been posted, or if sent by facsimile or other electronic means, one Business Day after transmission.

9.    Any dispute, controversy, proceedings, or claim of whatever nature arising, out of or relating to this Agreement (including non-contractual disputes or claims) or breach of its terms shall be governed by, and this Agreement shall be construed in accordance with, English law. The Courts of England and Wales shall have exclusive jurisdiction to settle any dispute arising out of or in connection with this Agreement or its formation (including non-contractual disputes or claims).

10.    Termination of this Agreement, however caused, shall be without prejudice to any rights or liabilities accrued at the date of termination.

11.    A person who is not a Party to this Agreement shall not have any rights under or in connection with it.

12.    This Agreement may only be amended in writing and signed for and on behalf of the Parties to it.

13.    This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute a duplicate original, but all the counterparts shall together constitute the one Agreement.

This document has been executed as an Agreement and is delivered and takes effect on the date stated at the beginning of it.

4

WH_MDL_00219510

**EXECUTED as an AGREEMENT** by
**XIPHIAS LLC TRUST**,
acting by

-----------------------------------------
)
)
)
-----------------------------------------
Authorised Signatory

-----------------------------------------
)
)
)
-----------------------------------------
Authorised Signatory

**EXECUTED as an AGREEMENT** by
**GANYMEDE CAYMAN LIMITED**,

-----------------------------------------
Director

5

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

## SCHEDULE

| Jurisdiction | Refund Agent | Refund Amount | Relevant Percentage | Indemnity Percentage |
|---|---|---|---|---|
| Denmark | Acupay System LLC | DKK 3,881,250 | 67.5% | 100% less the Relevant Percentage |

This schedule is accurate as at 12 October 2012. It may be amended from time to time and any amendment to this Schedule will be annotated by a reference to the date of amendment, the changes effected and the signature of an authorised signatory of the Advisor.

6

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

# TAX RECLAIM ADVISORY SERVICES AGREEMENT

Between

**Ganymede Cayman Limited**

**And**

**Lion Advisory Inc. Pension Plan**

**Dated**

**………………………………..**

1

WH_MDL_00219513

**THIS TAX RECLAIM ADVISORY SERVICES AGREEMENT** is made as of the date on the front of this Agreement.

**BETWEEN**

    **(1) LION ADVISORY INC. PENSION PLAN,** a pension plan registered in the State of New York, United States of America, whose address is 45 Perry Street, New York, NY 10014, United States of America (***Client***); and

    **(2) GANYMEDE CAYMAN LIMITED** a limited liability company registered in the Cayman Islands with registration number HL-242030 and whose registered office is at Appleby Trust (Cayman) Ltd., Clifton House, 75 Fort Street, PO Box 1350, Grand Cayman KY1-1108, Cayman Islands (***Advisor***),

together the ***Parties*** and each a ***Party***.

**IT IS AGREED**:

In this Agreement the following definitions will apply:

| | |
|---|---|
| ***Business Day*** | means any day when banks are open for business in London; |
| ***Costs*** | means the Refund Agent Fees and the Initial Fees (if any); |
| ***Fee*** | means the fee equal to the Relevant Percentage multiplied by the Net Refund Amount; |
| ***Indemnity*** | has the meaning given to it in Clause 5; |
| ***Indemnity Percentage*** | means the percentage factor applicable to the Refund Amount as listed in Column 5 (*Indemnity Percentage*) of the table in the Schedule; |
| ***Initial Fees*** | means the  a fee of €100,000 payable to the Advisor in two installments as follows (i) €50,000 payable on receipt of the Client's first Refund (irrespective of jurisdiction of the Refund); and (ii) €50,000 payable on receipt of the Client's second Refund (irrespective of jurisdiction of Refund); |
| ***Jurisdiction*** | means the jurisdiction in relation to which tax reclaim services are provided, as listed in Column 1 (*Jurisdiction*) of the table in the Schedule; |
| ***Net Refund Amount*** | means the Refund Amount less any Costs; |
| ***Refund*** | means dividend withholding tax refunds in aggregate equal to the Refund Amount and which are processed by the Refund Agent; |
| ***Refund Agent*** | means the tax reclaim agent as listed in Column 2 (*Refund Agent*) of the table in the Schedule; |
| ***Refund Agent Fees*** | means any amounts payable to the Refund Agent in relation to the collection of the Refund; |

2

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

| *Refund Amount* | means the amount as listed in Column 3 (*Refund Amount*) of the table in the Schedule; |
|---|---|
| *Relevant Percentage* | means the percentage factor applicable to the Net Refund Amount as listed in Column 4 (*Relevant Percentage*) of the table in the Schedule; and |
| *Services* | means tax reclaim advisory services provided by the Advisor, in respect of the relevant Jurisdiction. |

1.  It is agreed that, in accordance with this Agreement, the Advisor will carry out the Services for and on behalf of the Client.

2.  In consideration for carrying out Services for and on behalf of the Client, the Fee is payable by the Client to the Advisor within two (2) Business Days of receipt by the Client of the Refund:

    2.1    the Fee is payable by the Client to the Advisor in respect of the Services provided by the Advisor;

    2.2    if the actual Refund is less than the Refund Amount, then the Fee will be applied to such lower amount. If subsequently a further Refund is made, then further Fees will be paid accordingly; and

    2.3    the Client hereby agrees not to transfer any part of the Refund Amount out of the Client's cash account (*at its custodian*) until such time that the Fee has been settled.

3.  The Client appoints the Advisor on the date of this Agreement and instructs the Advisor to carry out the Services for and on behalf of the Client.

4.  The details listed in the Schedule may be varied from time to time as agreed between the Parties.

5.  The Client undertakes to indemnify the Advisor fully against all claims, losses, costs, expenses, damages or liability which it sustains or incurs as a result of providing the Services on behalf of the Client (*Indemnity*). The Indemnity will not (in aggregate) exceed the Refund Amount multiplied by the Indemnity Percentage.

6.  The terms of this Agreement shall not be construed so as to affect or prejudice any other right or remedy available to the Parties to this Agreement, above and beyond that contained in this Agreement, in the event of a breach of this Agreement by any Party.

7.  No neglect, delay or indulgence on the Client's or Advisor's part in enforcing the terms of this Agreement shall be construed as a waiver thereof.

3

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00219515

8.  Any notice, demand or other communication in connection with this Agreement between the Client and the Advisor:

    8.1  may be served personally, by electronic means or by first class post to the relevant Party at the address at the front of this Agreement (or such other address as it shall previously have been notified to the other Party); and

    8.2  notices shall be deemed to have been served three Business Days after having been posted, or if sent by facsimile or other electronic means, one Business Day after transmission.

9.  Any dispute, controversy, proceedings, or claim of whatever nature arising, out of or relating to this Agreement (including non-contractual disputes or claims) or breach of its terms shall be governed by, and this Agreement shall be construed in accordance with, English law. The Courts of England and Wales shall have exclusive jurisdiction to settle any dispute arising out of or in connection with this Agreement or its formation (including non-contractual disputes or claims).

10.  Termination of this Agreement, however caused, shall be without prejudice to any rights or liabilities accrued at the date of termination.

11.  A person who is not a Party to this Agreement shall not have any rights under or in connection with it.

12.  This Agreement may only be amended in writing and signed for and on behalf of the Parties to it.

13.  This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute a duplicate original, but all the counterparts shall together constitute the one Agreement.

This document has been executed as an Agreement and is delivered and takes effect on the date stated at the beginning of it.

4

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

**EXECUTED as an AGREEMENT** by
**LION ADVISORY INC. PENSION PLAN**,
acting by

------------------------------------------          ------------------------------------------
)                                                    )
)                                                    )
)                                                    )
------------------------------------------          ------------------------------------------
Authorised Signatory                                Authorised Signatory


**EXECUTED as an AGREEMENT** by
**GANYMEDE CAYMAN LIMITED**,

------------------------------------------
Director

5

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

## SCHEDULE

| Jurisdiction | Refund Agent | Refund Amount | Relevant Percentage | Indemnity Percentage |
|---|---|---|---|---|
| Denmark | Goal Taxback Limited | DKK 4,657,500 | 67.5% | 100% less the Relevant Percentage |

This schedule is accurate as at 12 October 2012. It may be amended from time to time and any amendment to this Schedule will be annotated by a reference to the date of amendment, the changes effected and the signature of an authorised signatory of the Advisor.

6

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

# TAX RECLAIM ADVISORY SERVICES AGREEMENT

Between

**Ganymede Cayman Limited**

**And**

**Mill River Capital Management Pension Plan**

Dated

**………………………………..**

1

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00219519

**THIS TAX RECLAIM ADVISORY SERVICES AGREEMENT** is made as of the date on the front of this Agreement.

**BETWEEN**

    (1) **MILL RIVER CAPITAL MANAGEMENT PENSION PLAN,** a pension plan registered in the State of New York, United States of America, whose address is 40 West 57th Street, Floor 20, New York, NY 10019, United States of America (*Client*); and

    (2) **GANYMEDE CAYMAN LIMITED** a limited liability company registered in the Cayman Islands with registration number HL-242030 and whose registered office is at Appleby Trust (Cayman) Ltd., Clifton House, 75 Fort Street, PO Box 1350, Grand Cayman KY1-1108, Cayman Islands (*Advisor*),

together the *Parties* and each a *Party*.

**IT IS AGREED**:

In this Agreement the following definitions will apply:

| | |
|---|---|
| *Business Day* | means any day when banks are open for business in London; |
| *Costs* | means the Refund Agent Fees and the Initial Fees (if any); |
| *Fee* | means the fee equal to the Relevant Percentage multiplied by the Net Refund Amount; |
| *Indemnity* | has the meaning given to it in Clause 5; |
| *Indemnity Percentage* | means the percentage factor applicable to the Refund Amount as listed in Column 5 (*Indemnity Percentage*) of the table in the Schedule; |
| *Initial Fees* | means the a fee of €100,000 payable to the Advisor in two installments as follows (i) €50,000 payable on receipt of the Client's first Refund (irrespective of jurisdiction of the Refund); and (ii) €50,000 payable on receipt of the Client's second Refund (irrespective of jurisdiction of Refund); |
| *Jurisdiction* | means the jurisdiction in relation to which tax reclaim services are provided, as listed in Column 1 (*Jurisdiction*) of the table in the Schedule; |
| *Net Refund Amount* | means the Refund Amount less any Costs; |
| *Refund* | means dividend withholding tax refunds in aggregate equal to the Refund Amount and which are processed by the Refund Agent; |
| *Refund Agent* | means the tax reclaim agent as listed in Column 2 (*Refund Agent*) of the table in the Schedule; |

2

| *Refund Agent Fees* | means any amounts payable to the Refund Agent in relation to the collection of the Refund; |

*Refund Agent Fees*    means any amounts payable to the Refund Agent in relation to the collection of the Refund;

*Refund Amount*    means the amount as listed in Column 3 (*Refund Amount*) of the table in the Schedule;

*Relevant Percentage*    means the percentage factor applicable to the Net Refund Amount as listed in Column 4 (*Relevant Percentage*) of the table in the Schedule; and

*Services*    means tax reclaim advisory services provided by the Advisor, in respect of the relevant Jurisdiction.

1.    It is agreed that, in accordance with this Agreement, the Advisor will carry out the Services for and on behalf of the Client.

2.    In consideration for carrying out Services for and on behalf of the Client, the Fee is payable by the Client to the Advisor within two (2) Business Days of receipt by the Client of the Refund:

2.1    the Fee is payable by the Client to the Advisor in respect of the Services provided by the Advisor;

2.2    if the actual Refund is less than the Refund Amount, then the Fee will be applied to such lower amount. If subsequently a further Refund is made, then further Fees will be paid accordingly; and

2.3    the Client hereby agrees not to transfer any part of the Refund Amount out of the Client's cash account (*at its custodian*) until such time that the Fee has been settled.

3.    The Client appoints the Advisor on the date of this Agreement and instructs the Advisor to carry out the Services for and on behalf of the Client.

4.    The details listed in the Schedule may be varied from time to time as agreed between the Parties.

5.    The Client undertakes to indemnify the Advisor fully against all claims, losses, costs, expenses, damages or liability which it sustains or incurs as a result of providing the Services on behalf of the Client (*Indemnity*). The Indemnity will not (in aggregate) exceed the Refund Amount multiplied by the Indemnity Percentage.

6.    The terms of this Agreement shall not be construed so as to affect or prejudice any other right or remedy available to the Parties to this Agreement, above and beyond that contained in this Agreement, in the event of a breach of this Agreement by any Party.

3

7.    No neglect, delay or indulgence on the Client's or Advisor's part in enforcing the terms of this Agreement shall be construed as a waiver thereof.

8.    Any notice, demand or other communication in connection with this Agreement between the Client and the Advisor:

8.1    may be served personally, by electronic means or by first class post to the relevant Party at the address at the front of this Agreement (or such other address as it shall previously have been notified to the other Party); and

8.2    notices shall be deemed to have been served three Business Days after having been posted, or if sent by facsimile or other electronic means, one Business Day after transmission.

9.    Any dispute, controversy, proceedings, or claim of whatever nature arising, out of or relating to this Agreement (including non-contractual disputes or claims) or breach of its terms shall be governed by, and this Agreement shall be construed in accordance with, English law. The Courts of England and Wales shall have exclusive jurisdiction to settle any dispute arising out of or in connection with this Agreement or its formation (including non-contractual disputes or claims).

10.    Termination of this Agreement, however caused, shall be without prejudice to any rights or liabilities accrued at the date of termination.

11.    A person who is not a Party to this Agreement shall not have any rights under or in connection with it.

12.    This Agreement may only be amended in writing and signed for and on behalf of the Parties to it.

13.    This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute a duplicate original, but all the counterparts shall together constitute the one Agreement.

This document has been executed as an Agreement and is delivered and takes effect on the date stated at the beginning of it.

4

**EXECUTED as an AGREEMENT** by
**MILL RIVER CAPITAL MANAGEMENT
PENSION PLAN**,
acting by

---------------------------------------                          ---------------------------------------
)                                                                )
)                                                                )
)                                                                )
---------------------------------------                          ---------------------------------------
Authorised Signatory                                             Authorised Signatory

**EXECUTED as an AGREEMENT** by
**GANYMEDE CAYMAN LIMITED**,

---------------------------------------
Director

5

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

## SCHEDULE

| Jurisdiction | Refund Agent | Refund Amount | Relevant Percentage | Indemnity Percentage |
|---|---|---|---|---|
| Denmark | Goal Taxback Limited | DKK 3,726,000 | 67.5% | 100% less the Relevant Percentage |

This schedule is accurate as at 12 October 2012. It may be amended from time to time and any amendment to this Schedule will be annotated by a reference to the date of amendment, the changes effected and the signature of an authorised signatory of the Advisor.

6

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

# TAX RECLAIM ADVISORY SERVICES AGREEMENT

Between

**Ganymede Cayman Limited**

**And**

**Delvian LLC Pension Plan**

Dated

**…………………………….**

1

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

**THIS TAX RECLAIM ADVISORY SERVICES AGREEMENT** is made as of the date on the front of this Agreement.

**BETWEEN**

    (1) **DELVIAN LLC PENSION PLAN,** a pension plan registered in the State of New York, United States of America, whose address is 40 West 57th Street, Floor 20, New York, NY 10019, United States of America (***Client***); and

    (2) **GANYMEDE CAYMAN LIMITED** a limited liability company registered in the Cayman Islands with registration number HL-242030 and whose registered office is at Appleby Trust (Cayman) Ltd., Clifton House, 75 Fort Street, PO Box 1350, Grand Cayman KY1-1108, Cayman Islands (***Advisor***),

together the ***Parties*** and each a ***Party***.

**IT IS AGREED**:

In this Agreement the following definitions will apply:

| | |
|---|---|
| ***Business Day*** | means any day when banks are open for business in London; |
| ***Costs*** | means the Refund Agent Fees and the Initial Fees (if any); |
| ***Fee*** | means the fee equal to the Relevant Percentage multiplied by the Net Refund Amount; |
| ***Indemnity*** | has the meaning given to it in Clause 5; |
| ***Indemnity Percentage*** | means the percentage factor applicable to the Refund Amount as listed in Column 5 (*Indemnity Percentage*) of the table in the Schedule; |
| ***Initial Fees*** | means the   a fee of €100,000 payable to the Advisor in two installments as follows (i) €50,000 payable on receipt of the Client's first Refund (irrespective of jurisdiction of the Refund); and (ii) €50,000 payable on receipt of the Client's second Refund (irrespective of jurisdiction of Refund); |
| ***Jurisdiction*** | means the jurisdiction in relation to which tax reclaim services are provided, as listed in Column 1 (*Jurisdiction*) of the table in the Schedule; |
| ***Net Refund Amount*** | means the Refund Amount less any Costs; |
| ***Refund*** | means dividend withholding tax refunds in aggregate equal to the Refund Amount and which are processed by the Refund Agent; |
| ***Refund Agent*** | means the tax reclaim agent as listed in Column 2 (*Refund Agent*) of the table in the Schedule; |
| ***Refund Agent Fees*** | means any amounts payable to the Refund Agent in relation to the collection of the Refund; |

2

WH_MDL_00219526

| *Refund Amount* | means the amount as listed in Column 3 (*Refund Amount*) of the table in the Schedule; |
|---|---|
| *Relevant Percentage* | means the percentage factor applicable to the Net Refund Amount as listed in Column 4 (*Relevant Percentage*) of the table in the Schedule; and |
| *Services* | means tax reclaim advisory services provided by the Advisor, in respect of the relevant Jurisdiction. |

1.   It is agreed that, in accordance with this Agreement, the Advisor will carry out the Services for and on behalf of the Client.

2.   In consideration for carrying out Services for and on behalf of the Client, the Fee is payable by the Client to the Advisor within two (2) Business Days of receipt by the Client of the Refund:

2.1   the Fee is payable by the Client to the Advisor in respect of the Services provided by the Advisor;

2.2   if the actual Refund is less than the Refund Amount, then the Fee will be applied to such lower amount. If subsequently a further Refund is made, then further Fees will be paid accordingly; and

2.3   the Client hereby agrees not to transfer any part of the Refund Amount out of the Client's cash account (*at its custodian*) until such time that the Fee has been settled.

3.   The Client appoints the Advisor on the date of this Agreement and instructs the Advisor to carry out the Services for and on behalf of the Client.

4.   The details listed in the Schedule may be varied from time to time as agreed between the Parties.

5.   The Client undertakes to indemnify the Advisor fully against all claims, losses, costs, expenses, damages or liability which it sustains or incurs as a result of providing the Services on behalf of the Client (*Indemnity*). The Indemnity will not (in aggregate) exceed the Refund Amount multiplied by the Indemnity Percentage.

6.   The terms of this Agreement shall not be construed so as to affect or prejudice any other right or remedy available to the Parties to this Agreement, above and beyond that contained in this Agreement, in the event of a breach of this Agreement by any Party.

7.   No neglect, delay or indulgence on the Client's or Advisor's part in enforcing the terms of this Agreement shall be construed as a waiver thereof.

3

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

8.    Any notice, demand or other communication in connection with this Agreement between the Client and the Advisor:

    8.1    may be served personally, by electronic means or by first class post to the relevant Party at the address at the front of this Agreement (or such other address as it shall previously have been notified to the other Party); and

    8.2    notices shall be deemed to have been served three Business Days after having been posted, or if sent by facsimile or other electronic means, one Business Day after transmission.

9.    Any dispute, controversy, proceedings, or claim of whatever nature arising, out of or relating to this Agreement (including non-contractual disputes or claims) or breach of its terms shall be governed by, and this Agreement shall be construed in accordance with, English law. The Courts of England and Wales shall have exclusive jurisdiction to settle any dispute arising out of or in connection with this Agreement or its formation (including non-contractual disputes or claims).

10.    Termination of this Agreement, however caused, shall be without prejudice to any rights or liabilities accrued at the date of termination.

11.    A person who is not a Party to this Agreement shall not have any rights under or in connection with it.

12.    This Agreement may only be amended in writing and signed for and on behalf of the Parties to it.

13.    This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute a duplicate original, but all the counterparts shall together constitute the one Agreement.

This document has been executed as an Agreement and is delivered and takes effect on the date stated at the beginning of it.

4

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

**EXECUTED as an AGREEMENT** by
**DELVIAN LLC PENSION PLAN**,
acting by

----------------------------------------                    ----------------------------------------
)                                                            )
)                                                            )
)                                                            )
----------------------------------------                    ----------------------------------------
Authorised Signatory                                        Authorised Signatory

**EXECUTED as an AGREEMENT** by
**GANYMEDE CAYMAN LIMITED**,

----------------------------------------
Director

5

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

## SCHEDULE

| Jurisdiction | Refund Agent | Refund Amount | Relevant Percentage | Indemnity Percentage |
|---|---|---|---|---|
| Denmark | Goal Taxback Limited | DKK 4,036,500 | 67.5% | 100% less the Relevant Percentage |

This schedule is accurate as at 12 October 2012. It may be amended from time to time and any amendment to this Schedule will be annotated by a reference to the date of amendment, the changes effected and the signature of an authorised signatory of the Advisor.

6

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER