# Exhibit 107 Part 1

# Freshfields Bruckhaus Deringer

Tax

# Dividend taxation for cross-border transactions

A multi jurisdictional review with case studies



Freshfields Bruckhaus Deringer LLP

CONFIDENTIAL

CONFIDENTIAL

WH_MDL_00463449

Dividend taxation for cross-border transactions

## Contents

| | |
|---|---|
| Introduction | 3 |
| Austria | 5 |
| Belgium | 9 |
| France | 15 |
| Germany | 23 |
| Italy | 27 |
| Netherlands | 32 |
| Spain | 36 |
| UK | 41 |
| US | 51 |
| Cross-border case studies | 59 |
| Your contacts | 76 |

**CONFIDENTIAL**                                                                                            **WH_MDL_00463450**

CONFIDENTIAL

# Introduction

Given the inherently territorial nature of domestic tax systems, opportunities can often arise for the sophisticated taxpayer to take advantage of differences in treatment when entering into cross-border transactions. Double tax treaties attempt to bridge the gaps between tax regimes but, while many are based on model treaties published by the Organisation for Economic Co-Operation and Development (OECD) or the United Nations, most are bilateral and all are separately negotiated leading to further variations.

That's not to say that Governments and tax authorities and supra-national bodies are not alive to the arbitrage opportunities. Indeed, in the last two months both the OECD and the EU Commission have published reports on double non-taxation (see the OECD's report *Hybrid Mismatch Arrangements: Tax Policy and Compliance Issues* published in March 2012 and the EU Commission's staff working paper/ consultation document *The internal market: factual examples of double non-taxation cases* in February 2012). Some jurisdictions are taking action. For example, it is understood that Switzerland is currently routinely refusing claims for double tax relief in respect of dividends in cases where the claimant has entered into hedging arrangements on the ground that the claimant no longer beneficially owns the dividend.

Our international tax group offers clients innovative tax solutions for which we have earned a market-leading reputation. The composition and geographical spread of our team of more than 140 tax practitioners means that our tax lawyers combine an in-depth knowledge of their own country's tax regimes with an understanding of how international transactions and structures work. This guide contains contributions from colleagues in Austria, Belgium, France, Germany, Italy, the Netherlands, Spain, the UK and the US.

What follows is a high-level review of the tax treatment of dividends under national and treaty-based rules, examining the meaning of the term dividend in each jurisdiction, how dividend income is attributed, the tax treatment of resident and non-residents before looking at more esoteric arrangements such a stock loans and derivatives and the tax treatment of manufactured dividends and new US rules concerning payments of substitute dividends under stock loans or sale and repurchase transactions and dividend equivalent amounts payable under certain derivative contracts, including where such payments are made between non-US residents. At the end of the review there are three case studies with a country-by-country explanation of how national and treaty-based rules would be applied by the tax authorities of each jurisdiction in practice.

CONFIDENTIAL          WH_MDL_00463452

CONFIDENTIAL

WH_MDL_00463453

# Austria

## What a dividend is

Austrian tax law defines a 'dividend' as a profit distribution on a share or a participation in a corporation's share capital. Constructive dividends – hidden profit distributions – also qualify as dividends for tax purposes. A distribution on hybrid capital, such as equity-like *jouissance* rights/ profit-participating instruments, qualifies as a dividend if it cumulatively provides for a participation in the profits and in unrealised capital gains/liquidation profits of the issuer.

Proceeds from the sale of dividend strips qualify as income from the sale of capital assets and result in an accelerated taxation of the strips' seller. Distributions by investment funds, transparent for Austrian tax purposes, are taxed as dividends to the extent a distribution is sourced from dividends received at the fund level.

The repayment of shareholder capital (reduction of the share capital or distribution of capital reserves) is not a dividend but treated as a partial sale of the shareholding. A corporation's capital reserves consists of, for example, share premia received on issuance of convertible bonds or call options on treasury shares or other capital contributions.

Austrian double taxation treaties provide for a dividend definition in line with the Organisation for Economic Co-operation and Development (OECD) Model Tax Convention; however, there are deviations in individual tax treaties.

## How dividend income is attributed

Dividend income is attributed to the person or entity with the income at its disposal. That is, the person or corporation that can decide on or abstain from generating income from an asset. This is the economic owner of the relevant asset. The civil law owner is also considered the economic owner of shares unless someone else is exposed to the economic risks and has the inherent ownership rights, such as the ability to sell, pledge or transfer the shares and to exclude any third party (including the legal owner) from doing so and to exercise voting rights. Dividends are attributed to the economic owner of the relevant shares at the time the shareholder meeting resolves on the dividend distribution.

Under a standard stock loan or repurchase transaction, economic ownership in shares for tax purposes is transferred from the lender to the borrower or from the repo seller to the repo buyer. This is because during the transaction the borrower or repo buyer is entitled to dispose of the shares as it thinks fits (for example, by selling, pledging, on-lending the shares) and is only obliged to re-transfer shares of the same kind.

The borrower or repo buyer is also treated as the recipient of dividends from an Austrian tax perspective. As an exception, Austrian tax authorities take the view in the decree on the Austrian Income Tax Act that economic ownership in shares would not be transferred to a borrower or repo buyer of shares if the transaction is entered into to grant a short-term 'security'.

CONFIDENTIAL          WH_MDL_00463454

The Austrian Federal Ministry of Finance considers a short-term security to prevail if the transaction does not exceed six months and its value is below the fair market value of the shares. The criteria for economic ownership as applied by the Supreme Administrative Court imply this exception should be limited to stock loan and repurchase transactions entered into for security purposes under terms that restrict the borrower's or repo buyer's capacity to dispose of the shares by selling, pledging, on-lending or otherwise dealing with the shares and to exercise voting rights.

Where an investor combines a physical long share position with a short derivative position before dividend record date, the short derivative position should not impede the investor's position as the beneficial owner of the shares for tax purposes.

Typically, double taxation treaties do not provide for any deviations as regards beneficial ownership.

## Taxation of domestic recipients of dividends

Dividends are subject to 25 per cent withholding tax to be levied by the dividend-distributing corporation.

### Taxation of corporations

For corporations subject to unlimited corporate tax liability in Austria, dividends from Austrian shares are exempt from corporate tax. Expenses connected to tax-exempt income are not deductible. As an exception to that rule interest incurred for the debt-financed acquisition of shares is tax deductible under Sec 11 (1)(4) Austrian Corporate Income Tax Act (unless the shares are acquired within a group).

Portfolio dividends from EU corporations and those distributed by corporations resident in a third state with which Austria has agreed a comprehensive exchange of information clause (this seems the case in 29 Austrian tax treaties with non-EU member states) are also exempt. Further, Austrian tax law exempts dividends *and* capital gains from at least 10 per cent shareholdings in non-Austrian corporations held uninterrupted for one year. A switch-over from an exemption to a credit of the underlying income taxes and withholding tax may apply to dividends from non-Austrian shares under certain conditions.

### Business partnerships

Partnerships are transparent for Austrian tax purposes, and at the level of a corporate shareholder, the dividends are treated like dividends in case of a direct investment.

## Taxation of non-resident recipients of dividends

### Corporations as shareholders

Dividends received by a non-Austrian resident entity are, in principle, subject to tax in Austria. The (corporate) income tax is levied through Austrian withholding tax at a rate of 25 per cent.

Corporations within the scope the EU Parent-Subsidiary Directive are exempt and may get relief from Austrian withholding tax at source if they hold a participation of at least 10 per cent uninterrupted for one year.

Freshfields Bruckhaus Deringer LLP                    *Dividend taxation for cross-border transactions*

CONFIDENTIAL                                    WH_MDL_00463455

Under a double taxation treaty, the 25 per cent Austrian withholding tax on dividends will be reduced to 15 per cent (or even 0 per cent; for example, under certain tax treaties such as with the UAE or Kuwait). As the reduction of Austrian withholding tax is not granted at source in the case of listed companies, non-Austrian corporations have to claim a refund from Austrian tax authorities. Further, under Sec 21(1)(1a) KStG, corporations resident in an EU member state (or Norway) may get an extra refund of Austrian withholding tax on dividends (ie, the Austrian withholding tax amounts not refunded under the tax treaty) up to an amount that may not be credited under a tax treaty against the corporate income tax on those dividends in the respective shareholder's residence state. The recipient has to prove that the Austrian withholding tax may fully or partly not be credited against the corporate income tax in the residence state. See 21(1)(1a) KStG may therefore lead to full relief from Austrian withholding tax.

These withholding tax reductions are subject to the recipient being considered the economic owner of the shares and attributed the dividend income, which requires that the recipient meets certain economic substance requirements.

### Partnerships

Non-Austrian partnerships are either treated as a transparent entity for Austrian tax purposes, in which case the shareholders are taxed in the same way as a direct investor, or considered a separate legal entity and taxed like a non-Austrian corporation, subject to whether the entity is comparable to an Austrian partnership or corporation.

## Treatment of manufactured dividends under stock loans or derivatives

### Taxation

A manufactured dividend paid for Austrian shares received by an Austrian tax resident corporation is treated like a dividend.

Manufactured dividends paid for Austrian shares to a non-resident recipient under a stock loan or repurchase transaction may not be subject to Austrian withholding tax. As of 1 April 2012, Austrian withholding tax may apply on a manufactured dividend paid for Austrian shares if the manufactured dividend is paid by an Austrian credit institution or Austrian branch of a non-Austrian credit institution; however, this does not apply to other corporate entities. A manufactured dividend paid for non-Austrian shares should not be subject to Austrian withholding tax.

Manufactured dividends paid under a stock loan or repurchase transaction are treated like a retroactive cancellation of dividend income, which leads to the manufactured dividend not being deductible for Austrian tax purposes if the dividend income is exempt at the level of the payer of the manufactured dividend.

Manufactured dividends received under a cash-settled derivative (for example, future, equity swap, forward) by an Austrian resident corporation are fully taxable. Payments under a derivative could, in principle, be subject to Austrian withholding tax as of 1 April 2012 if paid by an Austrian depository. The same applies if the paying agent is Austrian, if the non-Austrian depository is a non-Austrian branch or group

CONFIDENTIAL                                                           WH_MDL_00463456

company of the paying agent and the paying agent processes the payment in co-operation with the non-Austrian depository. However, a general exemption from Austrian withholding tax applies in case of payments to non-Austrian resident recipients.

**Anti-abuse and converting a dividend into a manufactured dividend**

Neither a stock loan with a manufactured dividend nor a combination of a long share position and a cash-settled derivative should be considered as an abuse of law under the Austrian general anti-abuse clause.



8    Freshfields Bruckhaus Deringer LLP      *Dividend taxation for cross-border transactions*

CONFIDENTIAL

WH_MDL_00463457

# Belgium

What a dividend is

In the Belgian Income Tax Code (the BITC), a 'dividend' is defined as:

- all benefits attributed by a company to shares and profit certificates whatsoever, irrespective of the entitlement and the way they are received;

- total or partial repayments of authorised capital, except repayments of paid-up capital;

- total or partial repayments of share premiums, except repayments of share premiums that are treated as being tantamount to paid-up capital;

- capital gains realised on the redemption of the company's own shares;

- revenues paid or attributed in a total or partial division of the registered capital; and

- constructive dividends; that is, interests on advance payments to the extent they exceed arm's-length interests or to the extent the total of the advance payments exceeds the taxable reserves at the beginning of the taxable period and the paid-up capital at the end of this taxable period.

The key element for the dividend qualification under Belgian tax law is the necessary impoverishment that the dividend attribution should entail for the company and the enrichment of the shareholder. Hence, bonus shares attributed following a capital increase through the incorporation of reserves do not qualify as dividends, but a stock dividend; that is, the payment of dividends under the form of new shares, does.

Given the broad definition of taxable dividends, irrelevant factors for dividends to qualify as such for Belgian internal tax law purposes are:

- the nature of the distributing company and its fiscal residence. Both partnerships and companies with share capital, with fiscal residence in Belgium or elsewhere are considered able to attribute taxable dividends for Belgian tax law purposes;

- the form of the parts (registered, dematerialised or bearer shares);

- the special rights attached to it. Both ordinary and preferential shares, with or without voting rights, representing the authorised capital or not, founder's shares, profit-sharing certificates, etc, can qualify as taxable dividends for Belgian tax law purposes;

- the qualification given to it by the distributing company (ordinary dividends, super dividends, intercalary dividends, complementary dividends, interests, etc);

- the way to determine and to attribute the revenues. This means that taxable dividends can encompass both the distribution of fixed and variable revenues, allocated or attributed during the accounting period or after its closing, in cash or otherwise;

- the origin of the revenues. A taxable dividend can entail the distribution of reserved benefits or benefits of the financial year, operational benefits or

CONFIDENTIAL    WH_MDL_00463458

from exceptional operations even not entering into the framework of the normal activity of the company;

- the effective collection of the dividends by the shareholders or rightful claimant. Determinative is whether the dividends have been attributed or made payable by the company (in application of article 267 BITC); and

- the lawfulness of the attribution. Even dividends attributed in violation with the company code or a statutory provisions can qualify as taxable dividends.

For collateralisation agreements and lending agreements, the statute of 15 December 2004 provides that for shares, indemnities for missing coupons (IMCs) are treated, for tax purposes, as an indemnity, not as an 'income substitute'. The tax treatment of the IMC does, as a rule, not take into account the underlying dividend flow.

For market payments for a share sold cum but delivered ex coupon, no such specific statutory provision exists. It is generally accepted that the market payment is to be treated as a real dividend receipt for tax purposes by the buyer. To the best of our knowledge it is market practice to consider that the credit to the counter-party's accounts; that is, the dividend compensation payment, reflects receipt of an actual dividend by the buyer. We are not aware of any case in which the Belgian tax authorities have challenged this approach. Contrary to the Dutch income tax rules, for instance, a dividend withholding tax credit under Belgian corporate income tax

rules is not subject to the remittance of any type of formal voucher or tax form.

For double tax treaties, a dividend is given the meaning under Belgian internal law if Belgium is the source country. The same definition, as stated in the BITC, is used to this end except for the older double tax treaties Belgium has with some countries. The question arises whether the provided requalification of certain interest payments (constructive dividends) can apply to double tax treaties.

## How dividend income is attributed

Under Belgian domestic tax law, the beneficial owner of a dividend is the person who holds legal title to – or a 'right *in rem*' that includes the income entitlement on – the underlying shares. For dividends, it is important to note that entitlement to a dividend does not accrue over time, but is created when the dividend is attributed or becomes payable.

A beneficiary of a dividend, while holding (the ownership of) the shares in its own name, under a contractual obligation to pay over the dividend income to an ultimate beneficiary, does not qualify as a beneficial owner under Belgian domestic tax law. This exclusion addresses the situation where the holder of the shares has issued share certificates to third parties for the account of which he would be holding the shares. Such third parties would traditionally either have financed the share acquisition or have initially transferred the shares to such holder.

Freshfields Bruckhaus Deringer LLP                    *Dividend taxation for cross-border transactions*

CONFIDENTIAL

WH_MDL_00463459

In other words, Belgian domestic tax law requires that the beneficial owner is the legal owner – or the owner *in rem* – in its own name and for its own account. One should verify whether an entity that claims a withholding tax credit or exemption is actually entitled to the dividend income and can exercise the powers attached to the shares and is at leisure to alienate them.

This strict legal approach follows from the old administrative comments. Furthermore, there is little or no authoritative guidance under Belgian internal law regarding this matter except for an answer of the minister of finance to a parliamentary question that reflects the viewpoints of the Belgian tax authorities. The case entailed a Chinese tax resident who held shares in a Belgian company via a Hong Kong special purpose vehicle. The Belgian–Hong Kong income tax treaty provides for an exemption from withholding tax on dividend payments, whereas the income tax treaty between Belgium and China provides for a 10 per cent withholding tax.

The minister of finance answered that the Belgian tax authorities will continue to give a strict legal interpretation of beneficial owner, and will verify whether or not the special purpose vehicle would act as a conduit for the account of the legal owner of the shares. Only if the special purpose vehicle would act as a conduit for the account of the legal owner of the shares, the special purpose vehicle would not qualify as the beneficial owner of the shares. The Belgian minister of finance thus appeared to say that only nominees or administrators/representatives who act on account of third parties do not qualify as beneficial owners.

## Taxation of domestic recipients of dividends

All Belgian-sourced dividends and foreign-sourced dividends paid out by a Belgian intermediary are, in principle, subject to Belgian dividend withholding tax (WHT).

The general WHT rate is 25 per cent but several exceptions apply under certain circumstances under both domestic legislation and double tax treaties. For instance, a reduced rate of 21 per cent applies to certain qualifying shares issued in a public offering after 1 January 1994. In a liquidation of a company a rate of 10 per cent applies. WHT is not imposed on dividends distributed to a qualified domestic, EU or treaty parent; that is, a company that holds a shareholding of at least 10 per cent in a Belgian company for an uninterrupted period of one year (the Parent-Subsidiary regime). Also, an exemption applies to dividends paid to a beneficiary who is identified as a non-resident in Belgium who is not conducting a business or lucrative activities and who is, in his country of residence, exempt from income tax. Canadian and Dutch pension funds qualify as such entities.

### Corporations

For corporations, the WHT constitutes an advance on payment of the Belgian corporate income tax. Hence, Belgian WHT is imputed on the Belgian corporate income tax due.

Under the dividend participation exemption, 95 per cent of the dividends received by a qualifying Belgian company or branch are exempt from corporate income tax.

CONFIDENTIAL                                        WH_MDL_00463460

To that end the company must hold for at least one year a minimum participation of 10 per cent or a participation with an initial investment value of at least €2.5m. The company distributing the dividend should meet a subject-to-tax test. Excess participation exemptions can be carried forward indefinitely to the extent that it concerns dividends from companies established in the EEA or that satisfy conditions in a country with which Belgium has concluded a double tax treaty (the Participation Exemption).

**Partnerships and UCITs**

Belgian partnerships are treated as tax transparent for Belgian tax purposes. Hence, dividends received by a Belgian partnership are flowed through to the partners in proportion to their share in the partnership. The partner's identity determines whether Belgian WHT exemptions or reductions can apply.

All types of public, institutional and private institutions for collective investment listed in the Belgian statute on certain forms of collective management of investment portfolios from 20 July 2004 (UCITS Act) are treated tax transparent if they comply with the ventilation obligations with respect to the nature of their underlying assets, contained in article 321*bis* BITC (the Ventilation Obligations). If not, a uniform but penalising 25 per cent withholding tax rate is levied on the payments made by the UCIT to its partners/investors.

## Taxation of non-resident recipients of dividends

**Corporations as shareholders**

Foreign recipients of dividends are, in principle, subject to Belgian WHT on Belgian-sourced dividends and foreign-sourced dividends paid out through the intervention of a Belgian intermediary but subject to relief under the Parent-Subsidiary regime (when distributed to a qualified domestic, EU or treaty parent) or a reduced rate or an exemption under a double tax treaty.

**Partnerships and funds**

All foreign funds lacking legal personality that meet the Ventilation Obligations are treated tax transparent for Belgian tax law purposes. Hence, in such cases the respective partner's identity is determinative for the application of a Belgian WHT exemption or reduced rate to apply. If not, a uniform but penalising 25 per cent withholding tax rate is levied on the payments made by the fund or partnership to its partners/investors.

No Belgian WHT is due on dividends paid to a beneficiary who is identified as being a non-resident in Belgium who is not conducting a business or lucrative activities and who is, in his country of residence, exempt from income tax. The exemption applies on condition that the dividend-paying entity receives an attestation that certifies that the beneficiary of the dividend is the owner or *usufruct* holder of the dividends, is a non-resident who is not conducting a business or lucrative activities and who is, in his country of residence, exempt from income tax and is not held to

CONFIDENTIAL    WH_MDL_00463461

pay the dividends received to the beneficial owner on a contractual obligation. Canadian and Dutch pension funds are considered to qualify as entities that can avail themselves of the benefit of this exemption.

Partnerships are considered tax transparent for double tax treaties in line with the approach developed in the Organisation for Economic Co-operation and Development (OECD) Comments on Partnerships.

Treatment of manufactured overseas dividends under stock loans or derivatives

**Indemnities for missing coupons**

Collateralisation agreements and stock loans lead to a taxation of the full amount of the coupon received by the acquirer/borrower, combined with a full deduction at the level of the acquirer/borrower of the IMC paid to the transferor/lender. To that effect, taxation of the income from the underlying financial instrument will occur at the moment when the coupon is payable, not at the end of an accounting year in proportion to the time involved. The same will be the case for the deduction of the IMC.

As a result, dividends obtained by the acquirer/borrower from shares that are the object of a collateralisation or lending transaction will in all cases be fully taxable (no Participation Exemption because the borrower is not holding the shares in full property), while the IMC paid in respect of such dividends will in all cases be deductible to the acquirer/borrower and be fully taxable to the transferor/lender.

Any WHT suffered by the acquirer/borrower is, as a rule, fully creditable, because for the borrower/acquirer to fund the payment of the IMC, he needs to obtain the income gross. Exceptions to this rule were introduced to avoid perceived misuses of the system. As a result, the tax credit for withholding tax can be limited proportionally at the level of the acquirer/borrower, if the total holding period of the financial instrument in the hands of the acquirer/borrower plus the holding period in the hands of the transferor/lender would be less than the total interest period.

The reason is that without such a limit, private individuals could sell financial instruments near the end of an interest period to companies that would avoid the pro rata limit of the withholding tax credit by entering into lending transactions. In general, the draft bill contains clauses that prevent the transferor/lender from converting interest or dividend income that would put him at a tax disadvantage into an IMC that would potentially be exempt from withholding tax.

For the transferor/lender, the regular rules requiring that at the end of the accounting period the pro rata part of interest coupons that proportionally relates to the accounting period be taken into taxable income is extended to the IMC to be received by the transferor/lender.

**Market claims**

In case shares are acquired on the market on a date that includes the latest dividend coupon (purchase cum dividend), but are delivered to the buyer under the market's settlement system after the dividend has

CONFIDENTIAL    WH_MDL_00463462

become payable (settlement ex coupon), then the indemnity that the buyer receives for the lack of such coupon, generally referred to as the 'market claim', is treated for tax purposes as a regular dividend obtained by the buyer.

This is a market practice that is consistently upheld by the tax authorities and that is in line with the fact that, as a rule, title to the shares passes on the trade date (the 'cum moment').

Recent amendments to the Euroclear settlement rules have lead to the fact that in all regular settlement situations, which occur on a t+3 basis, no combination of purchase 'cum dividend' and a settlement 'ex dividend' can occur any more.

**Anti-abuse considerations**

For stock loans and collateralisation agreements:

On share-related transactions the IMC will not be deductible to the extent that the acquirer/borrower has sold the shares in the market with a view to repurchase them after the coupon payment date and transfer them back to the transferor/ lender. This rule is limited to agreements for shares only, because in that case the acquirer/borrower could convert a taxable dividend (which corresponds to a deductible IMC) into a tax-exempt gain as a result of its short position (sales price (cum coupon) would be higher than the subsequent repurchase price (ex coupon)).

As a result, the IMC deduction will be disallowed to the extent that the acquirer/borrower himself has not obtained a taxable dividend or a taxable IMC for such financial instruments.

This provision has made it possible for the official comments to the draft bill to confirm the (much debated) position that a gain resulting from such a short sale of shares qualifies as a tax-exempt capital gain.



CONFIDENTIAL    WH_MDL_00463463

# France

## What a dividend is

'Dividend' is not defined for French tax purposes. Its meaning is a matter of corporate law and corresponds to a profit distribution, in cash or in kind, that the shareholders decide (or that the management board of the corporation decides, in the form of an interim dividend).

The Conseil d'Etat (French Supreme Administrative Court) defines dividend as an amount distributed by the corporation to its shareholders, under a regular decision of the shareholders' meeting, in line with the provisions of the French commercial code[1].

French tax law also brings into charge to tax certain distributions that do not qualify as dividends. Subject to certain exceptions these include:

- all profits or income of a corporation that are neither booked in the reserve accounts nor incorporated in the share capital;

- any distribution, other than a dividend, by a corporation out of its assets (whether in cash or otherwise) in respect of its shares;

- hidden distributions; ie, any direct or indirect benefit a corporation grants to its shareholders, including (in particular) the transfer of assets from a corporation to its shareholders at a price lower than the market price or similar transactions not on arm's-length terms;

- any sums put at the disposal, directly or indirectly, of its shareholders by a corporation as loans, advances, or instalments, subject to the contrary proof by the corporation and/or its shareholders;

- repayments of capital, to the extent the corporation has distributable income, and share redemptions/buyback proceeds; and

- liquidation proceeds.

For double tax treaties, a dividend is generally construed in line with the French domestic definition[2]. Hence, under treaties that follow the Organisation for Economic Co-operation and Development (OECD) model, non-dividend distributions to shareholders (ie, distributions not considered dividends from a legal point of view) are not covered by the dividend clause and, as a consequence, are exempt from French dividend withholding tax. Most of France's recent tax treaties provide for a broader definition intended to capture in particular hidden distributions.

## How dividend income is attributed

For tax purposes, the person liable for tax for a dividend is generally the legal owner of the shares on the dividend date. Equally, the person entitled to a reduced taxation, an exemption or a tax credit for a dividend is the legal owner of the shares to which the dividend is attached, subject to the beneficial ownership provisions in tax treaties.

---

[1] CE, 26 Feb. 2001, # 219834, Anzalone, RJF 5/01 # 619.

[2] CE, 13 Oct. 1999, # 190083, Banque Française de l'Orient, RJF 12/99, # 1587.

CONFIDENTIAL                                                                    WH_MDL_00463464

There is little authority under French domestic tax law about the scope and extent of the beneficial ownership requirement. The most significant precedent in this context is the *Bank of Scotland* case, which leaves unanswered questions; in particular whether a challenge based on lack of beneficial ownership requires an abusive intent of the parties[3]. The French tax code does not define beneficial ownership, and the published statements of practice of the French tax authorities only give scarce and vague examples of situations where the immediate dividend recipient does not qualify as beneficial owner; they do not define beneficial ownership.

Without clear guidance on how the beneficial ownership requirement should be interpreted under French law, it is suggested that the relevant tests (which should apply cumulatively) should be whether the income recipient: first, acts as a principal, for its own account; second, is taxable in its home jurisdiction for the income in question; and third, derives arm's-length net income from the transaction that gives rise to the income.

[3]
CE, 29 Dec. 2006, # 283314, min. c/*Sté Bank of Scotland*. RJF 3/07 # 322. Under the facts of the case, a UK bank had bought from a US corporation the temporary right (usufruct) to receive dividends on French preferred non-voting shares (issued by a French subsidiary of the US corporation) over a three year period. The price the bank paid for the right to receive the dividends was substantially equal to the cumulative amount of the dividends over the three years. The French tax authorities denied the transfer of the then in force tax credit (*avoir fiscal*) and the application of the reduced treaty withholding rate, on the grounds that the bank was not the beneficial owner of the dividends and thus was not entitled to the benefits of the treaty between France and the UK. The Conseil d'Etat upheld the tax authorities' position, recharacterised the transaction as a financing, and ruled that the US parent had remained the beneficial owner of the dividends.

## Taxation of domestic recipients of dividends

### Corporations

Under the French 'parent-subsidiary' regime, dividends received by a qualifying French parent company are exempt from corporate income tax, subject to a 5 per cent portion that is added back to the recipient's ordinary taxable income.

The main relevant requirements include that first, the parent company needs to own at least 5 per cent of the distributing subsidiary's share capital (subject to limited exceptions) and voting rights; second, the shares of the subsidiary need to be in registered form (or to be deposited with a financial establishment recognised by the French tax authorities); third, the parent company needs to own the shares for at least two years (dividends paid before the end of the two-year period benefit from the exemption, which is, however, forfeited retrospectively if the parent company disposes of the shares – other than in the course of certain qualifying shares-for-shares exchanges – during that period).

Where the parent company and the subsidiary are members of the same tax consolidation group, the 5 per cent add-back is neutralised (ie, eliminated for purposes of determining the group's aggregate taxable income), thus achieving a complete exemption of intra-group dividends. However, the neutralisation does not apply for dividends paid in the first fiscal year that the distributing company is a member of the group.

Dividends received from corporations established in certain black-listed

CONFIDENTIAL                                                                    WH_MDL_00463465

countries (so-called non-co-operative states or territories) are excluded from the parent-subsidiary regime.

Dividends paid to companies that do not benefit from the parent-subsidiary regime are, in principle, subject to corporate income tax at the standard rate, which is set at 33. 1/3 per cent plus, as applicable, the social contribution of 3.3 per cent, and the exceptional contribution of 5 per cent for companies with annual gross sales exceeding €250m.

Expenses (including funding costs) incurred in connection with dividends are tax deductible, regardless of whether the dividends are effectively subject to corporate income tax under general rules.

### Individuals

Dividends received by French resident individuals are in principle:

- either included in the global income subject to income tax at progressive rates, to which are added social contributions at the current rate of 13.5 per cent; or

- on election of the beneficiary with the paying entity at the latest when the dividends are received, subject to a withholding tax paid in full satisfaction of income tax (*prélèvement libératoire*) at the rate of 21 per cent, to which are added social taxes at the rate of 13.5 per cent.

### Exempt funds (including pension funds and charities)

Qualifying French tax resident pension funds and charities are taxed on dividends at the rate of 15 per cent.

French UCITS (OPCVM) are generally outside the scope of or exempt from corporate income tax on dividends.

### Partnerships

Dividends received by a French partnership are flowed through to the partners pro rata to their respective partnership interests and included in their respective taxable results. Dividends received by French corporations through a French partnership are not eligible for the parent-subsidiary regime mentioned above.

### Taxation of non-resident recipients of dividends

Under French domestic law, dividends paid by a company having its registered office in France to shareholders domiciled or having their registered office outside France are subject to a 30 per cent withholding tax. The withholding rate is reduced to 21 per cent on dividends paid to individuals resident in an European Economic Area (EEA) member state and is increased to 55 per cent on dividends paid into a non-co-operative state or territory. Qualifying foreign pension funds and charities established in an EEA member state benefit from a reduced domestic dividend withholding tax rate of 15 per cent.

Full exemption is available if a French company subject to corporate income tax makes the distribution to a qualifying EU parent company (or a parent company established in Iceland, Liechtenstein or Norway) substantially in the same position (in terms of size and length of ownership) as a French domestic shareholder

---

CONFIDENTIAL                                                                                      WH_MDL_00463466

eligible for the parent-subsidiary regime. The exemption is subject to the following, cumulative requirements:

- the parent company holds at least 5 per cent of the share capital and voting rights of the French subsidiary;

- the parent company has held or commits to hold its shares in the French subsidiary for at least two years;

- the shareholder must be able to prove it is not in a position to credit any French withholding tax relating to the dividends against its home country tax liability (for example, as a result of a local participation-exemption regime, or of tax losses and no possibility to carry forward foreign tax credits, or in the case of liquidation of the shareholder) or to receive any refund of that credit from its home country tax authorities. As the case may be, where only a fraction of the tax credit is not capable of being used, the withholding tax exemption applies pro rata; and

- the parties must not have entered into an artificial arrangement for tax avoidance (ie, economic substance test).

Most French tax treaties reduce the domestic withholding tax rate to 5 per cent for dividends from substantial shareholdings (ie, dividends received from corporations where the recipient holds more than 25 per cent (generally) of the shares) and 15 per cent in other cases. A few treaties provide for zero rating for substantial shareholdings (Germany, Austria, Finland, Sweden and Spain – the ownership threshold is then reduced to 10 per cent in most of the cases).

## Treatment of overseas manufactured dividends under stock loans or derivatives

### Stock loans

Except for stock loans subject to the French tax neutral regime (see below), neither French law nor the guidelines issued by the French tax authorities provide for any classification rules for payments made under stock loans. Therefore, such payments must be analysed in line with general principles of French tax law.

Although stock loans entered into by French parties are not necessarily subject to that regime, the French monetary and financial code provides for a specific tax neutral stock loan regime, whose application is subject to several conditions. In particular, the securities that may be borrowed under that regime cannot include securities that, during the term of the loan, give rise to a dividend or interest payment.

The French tax code provides for the tax regime applicable to transactions subject to the specific stock loan regime. The code provides in particular that, where a transaction spans a coupon date, the borrower must make a manufactured payment to the lender, and that manufactured payment 'is subject to the same tax regime as the income arising from the securities lent'.

The latter provision, which addresses all income payments arising during the term of the loan, contradicts the aforementioned prohibition under the specific stock loan regime that certain income payments arise on the underlying securities during the transaction. However, these provisions

CONFIDENTIAL    WH_MDL_00463467

may receive a consistent interpretation if the French tax code (which addresses any manufactured payment, without reference to the securities borrowed or the payments made thereon) is construed as addressing only loans of debt securities and the on-payment by the borrower of underlying interest income to which no tax credit is attached (for example, where the securities borrowed are French debt securities, or where the debt issuer is not established in a treaty-protected jurisdiction).

As a consequence, manufactured dividends under stock loans, including those made subject to the specific stock loan regime mentioned above, should be classified as ordinary income for French corporate income tax purposes. It follows that there is no rule under French tax law where the borrower makes payments *in lieu of* dividends, that the lender should be treated as though it had received the dividends directly. There is also no authority that a stock lender could use affirmatively a treaty's beneficial ownership concept; ie, could argue that where payments *in lieu of* are made, the stock borrower should be treated as a simple conduit acting on behalf of the stock lender and that correlatively, the stock lender should be respected as the beneficial owner of the dividends and thus be entitled to the benefits of the treaty.

Accordingly, in a cross-border context that entails a French stock borrower and a stock lender established in, and acting from, another jurisdiction, manufactured payments:

- should not be subject to the French withholding tax applicable to dividends

(if one follows the view that these payments should not be classified as dividends, which they are not under commercial law);

- are usually viewed as forming part of the remuneration of the stock loan counter-party, considered as such as a remuneration for services subject to a French withholding tax at a rate of 33. 1/3 per cent. However, the tax treaty (if any) entered into between France and the country of residence of the foreign stock loan counter-party would generally prohibit France from taxing these payments unless the counter-party is acting from a French permanent establishment; and

- should be fully deductible by the French stock borrower for corporate income tax purposes.

**Market claims**

In the case of a transaction spanning the dividend payment (ie, where the dividend payment date is after the trade date and on or before the settlement date) on a regulated market or multilateral trading facility, the buyer is considered as having title, from the date of order execution (ie, from the trade date), to any financial rights detached between the trade date and the date of entry of the shares into the buyer's account.

Thus, although title to the shares passes to the buyer on the settlement date, title to any financial payments such as dividends passes to the buyer as early as on the trade date. This treatment is consistent with the economics of the transaction, since the sale price agreed on the trade date is the

CONFIDENTIAL                                                                                    WH_MDL_00463468

cum dividend price and the buyer receives the shares ex dividend on the settlement date. Consequently, the buyer has a claim against the seller in an amount equal to the dividend (market claim). Even though, from a strict legal point of view, the market claim does not qualify as a dividend, it is treated as such for tax purposes (article 158-3-3° c. of the French tax code).

Where the seller is a French resident, no withholding tax applies on the actual dividend. Consequently, the market claim payable from the seller to the non-French resident buyer should be equal to the gross amount of the actual dividend, but the buyer's custodian would effect the withholding (at the rate appropriate to his client's situation: 30 per cent, or 15 per cent (generally if the buyer is eligible for treaty relief)), and pay the withholding tax to the French Treasury. The buyer would thus be credited with an amount equal to the net amount of the actual dividend.

Where the seller is not a French resident, the seller receives the actual dividend, net of withholding tax levied (and paid to the French Treasury) by the seller's custodian. The buyer needs to be treated as though he had received the actual dividend. To achieve this result, the market claim debited to the seller's account would be equal to the net amount of the dividend, and the buyer would have a claim (or a liability) against the Treasury for an amount reflecting the withholding tax rate that applies to the buyer. In either case, the total withholding tax paid to the Treasury would reflect the situation (tax residency, treaty entitlement) of the buyer.

## Derivatives

Payments made or received under equity derivatives should not qualify as dividends for French tax purposes and, as a consequence, should not be subject to French dividend withholding tax.

Such payments could, however, in certain cases be viewed as part of the remuneration of the derivative counter-party, considered as such as a remuneration for services subject to a French withholding tax at a rate of 33. 1/3 per cent if the counter-party is non-French. This is, however, subject to the applicable double tax treaty, if any, which would generally prohibit France from taxing these payments unless the counter-party is acting from a French permanent establishment.

## Anti-abuse considerations regarding the conversion of a dividend into a manufactured overseas dividend

The combination of a long share position and a cash-settled derivative in itself should not be considered as an abuse of law under the French general abuse of law doctrine. The foregoing assumes that the transaction is predominantly motivated by commercial reasons other than withholding tax minimisation and does not have as its main purpose, or one of its main purposes, to minimise the source country withholding taxes.

Recent case law from the Conseil d'Etat should provide some comfort in relation to transactions on French equities.

CONFIDENTIAL    **WH_MDL_00463469**

The relevant cases[4] entailed short-term transfers by French resident taxpayers of French equities over the dividend date, in each case to benefit from the (now repealed) dividend tax credit (*avoir fiscal*) that was attached to the dividends paid by French companies. In both cases, the Conseil d'Etat denied the existence of an abuse of law on the basis that the tax statute did not request the satisfaction of any other condition (in particular, no minimum length of ownership) to benefit from the *avoir fiscal* besides being a shareholder at the time of the dividend distribution. For that purpose, the taxpayer being the owner of the shares and retaining exposure to the economic risks associated thereto was the critical test.

There may be comparatively more pressure, from an anti-abuse perspective, as regards stock loans with manufactured overseas dividends, since these imply a form of circularity (shares going back physically to their original owner at unwind).

## Limitations on using foreign (dividend) tax credits

Foreign tax credit (FTC) is entirely treaty-based in France. Treaties generally provide that the amount of an FTC is capped at the amount of French tax on the item of income giving rise to the FTC.

Tax authorities used to consider that, for purposes of determining the FTC capacity, a taxpayer should deduct, from the item of foreign-source income giving rise to an FTC, all 'costs and expenses incurred for purposes of acquiring or retaining the income in question' ('butoir' rule).

The position of the French tax authorities was infirmed in 2009 by the Conseil d'Etats, which considered that there was no legal basis for the butoir rule and only costs directly connected with the receipt of the payment carrying the FTC (for example, account bank's fees) needed to be deducted. Other payments needed not (for example, interest expenses, outbound swap payments…).

The 2011 Finance Act introduced legislation that provides for a legal basis for the butoir rule but that has a limited scope since it only applies to repos, and other agreements that contemplate the re-transfer of securities to the transferor (or to a party related to the transferor), and does not apply if the taxpayer proves that the main purpose and effect of the transaction was not to benefit from the FTC.

---

[4]
CE, 7 Sept. 2009 ## 305586 and 305596; *SA AXA and Sté Henri Goldfarb*, RJF 12/09 ## 1138 and 1139. The fact pattern of these two cases was quite similar. *AXA* involved a significant number of short term sales/repurchases of French shares entered into by a French bank with third parties by means of stock loans or under the French civil law mechanism of *vente à réméré* (which gives the right, but not the obligation, to the seller to repurchase goods sold). And in *Goldfarb*, affiliated companies sold and repurchased to/from one another shares of French subsidiaries. The dividends received were (in cash terms, and for tax purposes) offset by the loss realised on the resale of the shares, the tax advantage stemming from the fact that the recipient also received a tax credit (*avoir fiscal*) stapled to the dividends, which was shared by the recipient with the seller/lender via the financial terms of the transactions (being in a loss making position, the seller/lender would not have been able to use the credit had it received directly). *Contra*: see TA Paris, 17 November 2010, # 0601719, *Kerguelen*, DF 24/11 comm. 395.

CONFIDENTIAL    WH_MDL_00463470

Under such legal rules, all costs and expenses incurred by the income recipient (and by persons related to the recipient) for purposes of 'acquiring' the income in question, including losses from disposals of the concerned securities and payments made to the counter-party (or to persons related to the counter-party), should be deducted for the purposes of determining the FTC capacity of the taxpayer. Outbound derivative payments should not be concerned (due to the reference to 'costs incurred for the purposes of acquiring the income').



Freshfields Bruckhaus Deringer LLP                    *Dividend taxation for cross-border transactions*

**CONFIDENTIAL**

**WH_MDL_00463471**

# Germany

CONFIDENTIAL

## What a dividend is

A 'dividend' is defined as a profit distribution on a participation in a corporation's share capital. A dividend comprises genuine dividends, constructive dividends (hidden profit distributions) and interim distributions. Distributions on hybrids, such as equity *jouissance* rights or profit-participating notes, also qualify as dividends if they confer participation both in the profits and in the liquidation proceeds of the issuer. Dividend encompasses fixed dividend payments to minority shareholders by a subsidiary under a tax grouping.

For shares sold cum dividend but delivered ex dividend, manufactured dividends credited by a clearing house to the cash account of the buyer are, as a rule, treated as dividends in the hands of the buyer. Proceeds from the sale of dividend strips also qualify as dividends and result in an accelerated taxation of the strips' seller. Actual and deemed investment funds distributions are taxed as dividends, to the extent a distribution is sourced out of a fund's dividend earnings.

In contrast, repayment of (hidden or outright) capital contributions into the share capital or the capital reserves is not a taxable receipt at shareholder level. A corporation's capital reserves consists of, for example, share premiums received on issuance of convertible bonds or call options on treasury shares.

German double taxation treaties provide partially for a special dividend definition. Otherwise, a dividend is construed also for treaty purposes in line with German domestic tax law principles. Typical deviations from the domestic dividend definition in treaties are the inclusion of distributions on silent partnership interests, participation bonds and profit contingent shareholder loans. Distributions by investment funds are considered as dividends under some treaties (for example, France, Spain, the UK and the US).

## How dividend income is attributed

A dividend is attributed to the beneficial owner of the shares on the dividend record date. Beneficial ownership follows, as a rule, legal ownership. However, if a third person can permanently exclude the legal owner from any control over, and benefits from, the shares, the shares are attributed to this beneficial owner rather than to the legal owner. According to precedents in case law, five test criteria apply. Who is entitled to the income from the shares? Who can sell, pledge, lend out or otherwise dispose of the shares? Who has upside potential and downside risk connected with the shares? Who has voting and membership rights? Whose creditors can seize or foreclose on the shares? The beneficial ownership test is also passed if not all the criteria are met, and the assessment is made under an overall approach.

In terms of a (genuine) repurchase transaction, German tax laws imply a transfer of beneficial ownership to the repo buyer. This applies to the borrower of stocks under a stock loan, albeit based on case law and revenue rulings the analysis is stronger.

WH_MDL_00463472

Where an investor combines a long share position with a forward sale (short equity swap, future, options combination) before the dividend record date, the short derivative position should not impede the investor's position as the beneficial owner of the shares for German tax purposes. This applies even if the investor has acquired the equities from and sold the derivative to the identical counter-party.

German double taxation treaties do not provide for any deviations on beneficial ownership.

## Taxation of domestic recipients of dividends

If the shares form part of a German business (including a German permanent establishment of a foreign business investor), the taxation of dividends differs depending whether the shareholder is a corporation or a partnership (co-entrepreneurship). But in any case, dividends are subject to withholding tax at an aggregate rate of 26.375 per cent (including solidarity surcharge). The withholding tax is credited against the shareholder's (corporate) income tax liability. Any excess of withholding tax over the final (corporate) income tax liability is refunded.

As of 2012, the distributing corporation pays the dividend gross into the clearing system if equities or (according to draft legislation) securitised equity *jouissance* rights are held in collective safe custody with Clearstream Banking as the central depository bank. The obligation to impose withholding tax is with the respective recipient's German custodian bank. Where equities or securitised equity *jouissance* rights are kept with a foreign custodian bank or where a foreign custodian bank is interposed in the custody chain, the obligation to levy withholding tax is with the German credit institution paying the dividend to a non-German custodian.

### Corporations

For corporations subject to unlimited corporate tax liability in Germany, dividends are, in substance, 95 per cent tax exempt from corporate tax while being, in principle, subject to trade tax. Business expenses incurred on the dividends are tax deductible (75 per cent of funding costs for trade tax purposes). Special rules (ie, full tax liability) apply to credit institutions and financial services institutions holding the shares on trading book and to financial enterprises holding the shares to generate a short-term trading profit. Further, the 95 per cent dividend exemption is also denied to life/health insurance companies and to pension funds.

### Business partnerships

In the case of shares held by a business partnership, the dividend for a corporation as partner is, in substance, 95 per cent tax exempt from corporate tax. In the case of an individual partner, 60 per cent of the dividend income is subject to income tax. Dividends are subject to trade tax at the level of a business partnership.

Freshfields Bruckhaus Deringer LLP          *Dividend taxation for cross-border transactions*

CONFIDENTIAL                                                                 WH_MDL_00463473

**Tax-exempt entities as shareholders**

Certain legal entities such as public corporate bodies or German tax resident corporations are, in principle, exempt from German unlimited tax liability. However, despite their general tax exemption, some of the exempt entities are taxable with their dividend income. In these cases, the respective corporate tax liability for dividends amounts to 15.825 per cent.

Taxation of non-resident recipients of dividends

**Corporations as shareholders**

A corporation with a statutory seat and an effective place of management outside Germany is subject to German withholding tax with any German-sourced dividend income. The withholding tax rate is 26.375 per cent. The non-German corporation may be granted a partial refund of withholding tax based both on German domestic tax laws and on treaties.

Corporations within the scope the EU Parent-Subsidiary Directive are entitled to a full exemption from withholding tax on application. The refund under the EU Parent-Subsidiary Directive with German domestic tax laws requires a participation of at least 10 per cent and a holding period of one year.

Besides, a double taxation treaty may provide for a reduction of German withholding taxes, usually down to 15 per cent. A further reduction can be achieved, in some cases even down to 0 per cent.

Also, corporations resident in a non-treaty state may be entitled to a partial refund

of withholding tax levied on dividends. German domestic tax law reduces the tax burden to 15.825 per cent, if the shareholder is a foreign corporation.

All the above withholding tax reductions are subject to an economic substance test. Under the recently amended (due to EU infringement proceedings) domestic anti-abuse rule, a relief can be granted to a non-resident corporation under certain conditions. If its shareholders would have been entitled to such treaty/EU directive benefits had they been the direct shareholders in the distributing company. Or if the current year gross revenues generated by the non-resident corporation derive from its own business activities.

Otherwise, a (partial) refund of withholding tax is only available if substantial commercial reasons can be shown for the interposition of the non-resident corporation with respect to the gross revenues subject to withholding tax, and if the non-resident corporation operates an adequately equipped business with general commercial intercourse.

On 20 October 2011, the European Court of Justice (ECJ) (C-284/09) held that the German portfolio dividend taxation infringes the free movement of capital because of a definite tax burden incurred by EU-resident corporations with shareholdings below 10 per cent. While a dividend is 95 per cent exempt from corporate tax in the hands of a German corporate shareholder, a EU corporation not qualifying under the EU Parent-Subsidiary Directive suffers a definite withholding tax of at least 15 per cent. In response, the German legislator

CONFIDENTIAL                                                    **WH_MDL_00463474**

is expected to restrict the applicability of the dividend tax exemption for German corporate shareholders as well.

### Partnerships

Partners in foreign partnerships are subject to limited German tax liability with the dividends received by the partnership. The tax is levied via withholding and results, in principle, in a definite tax burden. Treaty reliefs are available, if the partners in the partnership are treaty eligible.

### Treatment of manufactured overseas dividends under stock loans or derivatives

### Taxation

A manufactured overseas dividend (MOD) received by a German tax resident corporation or partnership under a stock loan is always fully taxable for corporate tax or income tax respectively as well as for trade tax purposes.

A MOD paid to a non-resident under a stock loan is not subject to German withholding tax, even if the MOD represents a German dividend subject to German withholding tax itself.

A MOD paid under a stock loan is fully deductible for corporate tax purposes and at least 75 per cent (arguably 100 per cent) deductible for trade tax at the level of a corporation/partnership (at partner level), if the investor is not eligible for the domestic dividend exemption regime. In contrast, for corporations benefiting from the domestic dividend exemption, the MOD

is usually not deductible for corporation tax purposes provided that it is paid to a so-called onerous lender. A lender is considered onerous if he does not qualify for the domestic dividend exemption or a similar foreign regime. This special anti-abuse rule applies accordingly to partnerships with corporate or individual partners.

MODs received under a cash-settled derivative (for example, future, equity swap, forward) are always fully taxable. MODs paid under a cash-settled derivative are not subject to German withholding tax. For corporation tax purposes, expenses under derivative transactions are ring-fenced and only offset against derivative income of the German investor. The ring-fencing rule does not, however, apply if the derivative hedges a trading book position of a German credit institution or financial services institution. Trade tax wise, the ring-fencing rules do not apply at all.

### Anti-abuse considerations regarding the conversion of a dividend into a MOD

Neither a stock loan with a MOD nor a combination of a long share position and a cash-settled derivative should be considered as an abuse of law under the German general anti-abuse clause.

CONFIDENTIAL    WH_MDL_00463475

# Italy

## What a dividend is

A 'dividend' is defined as a distribution of profits on shares and equity instruments and other distributions of profits on other financial instruments treated as equity for income tax purposes.

Under the Italian tax laws, dividend for tax purposes includes:

- distributions of profits derived from the participation in the capital or equity of a company subject to the Italian corporate tax (IRES);

- certain payments made under Italian silent partnership agreements;

- profit-related payments from domestic securities and financial instruments that are not deductible in the computation of income of the resident paying entity; and

- profit-related payments from foreign securities and financial instruments, if they are not deductible in the issuers' jurisdiction.

Italian double tax treaties define dividend as income from shares, *jouissance* shares or *jouissance* rights, mining shares, founders' shares or other rights, not being debt-claims, participating in profits, as well as income from other corporate rights that is subjected to the same tax treatment as income from shares by the laws of the state in which the company making the distribution is resident.

## How dividend income is attributed

Dividends are subject to taxation in the hands of the legal owner of the shares on the dividend record date. The legal owner is also the person entitled to reduced taxation, an exemption or a tax credit on a dividend.

Italian civil law does not contain the notion of 'beneficial ownership'. Indeed, legal and economic ownership are not separate concepts.

In the Italian tax laws there are no provisions that set out the notion of beneficial ownership. Therefore, where the Italian double tax treaties and certain domestic provisions refer to this concept, it is normally believed that the 'beneficial owner' (*beneficiario effettivo*) of a given item of income is the entity that realises the income as principal, not as agent or nominee of third parties.

This rather broad concept, however, does not apply in all circumstances, since there are situations whereby an entity, which collects income as principal (not as agent or nominee of third parties), still does not qualify as beneficial owner of that income, because it acts as a de facto agent or nominee for third parties. To qualify as a beneficial owner of the dividend (or any other proceed) the recipient must not act as an agent or nominee, but must receive an economic benefit from the transaction. In practice, the recipient must have legal ownership and availability of the amounts received.

Finally, it is worth considering that according to Italian anti-avoidance provisions, Italian tax authorities can disallow tax benefits derived from

CONFIDENTIAL

WH_MDL_00463476

acts, facts and contracts, even linked among them (trades on shares and derivatives included) that are:

- not based on valid (material, compared with the tax benefit) economic reasons;

- aimed at circumventing tax obligations or prohibitions set out by the tax laws; and

- aimed at getting tax reductions or tax refunds that would otherwise not be due.

The Italian Supreme Court has elaborated an 'abuse of law' doctrine, through several decisions on tax-led transactions, including the so-called dividend-washing trades. Based on the Supreme Court's latest decisions, abuse of law, whose principles are not ruled by any provisions of law, but derive directly from the Italian constitution, is defined more or less in line with the criteria set out in the Italian anti-avoidance provisions described above.

In particular, an abuse of law exists if there is a pathological use of contracts and legal instruments, and the tax benefit allowed by certain rules is obtained in a manner inconsistent with their underlying rationale.

## Taxation of domestic recipients of dividends

The Italian government has recently changed the tax treatment of income arising from a variety of financial instruments, including, among other things, the dividends. In particular, dividend taxation has been changed by the law decree 13 August 2011, No. 138 (converted, with amendments, into law 14 September 2011, No. 148), which applies as of 1 January 2012.

**Individual shareholders**

Dividends received by shareholders who are individuals and resident for tax purposes in Italy are subject to different tax treatment, depending on these circumstances:

- dividends paid on a non-substantial participation not held in a business capacity are subject to a final withholding or substitute tax at a rate of 20 per cent and must not be reported in the individual shareholders' tax return; and

- 50.28 per cent of dividends paid on a participation held in a business capacity or on a substantial participation not held in a business capacity are exempt from tax (60 per cent in the case of dividends paid out of profits of 2007 or previous years). The remaining 49.72 per cent of the dividends (40 per cent in the case of dividends paid out of profits of 2007 or previous years) is taxable at progressive rates (which range from 23 per cent to 43 per cent).

A participation is considered 'substantial' when it entitles the holder to more than 2 per cent of the voting rights or more than 5 per cent of the capital in companies listed on regulated stock markets (according to Italian jurisdiction), or more than 20 per cent of the voting rights or more than 25 per cent of the capital in other companies.

**Business partnerships and corporations**

Dividends received by business partnerships, corporations, and public and private entities resident in Italy for tax purposes

CONFIDENTIAL

WH_MDL_00463477

and the sole or principal purpose of which is to perform a commercial activity, are not subject to any withholding tax.

Dividends received by:

- business partnerships are subject to IRPEF in an amount equal to 49.72 per cent (40 per cent for dividends related to profits of 2007 or previous years) of the dividend amount received; the remaining 50.28 per cent (60 per cent for dividends related to profits of 2007 or previous years) is exempt from tax;

- corporations are subject to IRES, levied at the ordinary rate of 27.5 per cent, on 5 per cent of the dividend amount received; the remaining 95 per cent is exempt from tax (the PEX Regime). These rules apply to companies adopting IAS/IFRS, except for dividends paid on shareholdings classified as 'held for trading' that are fully taxable. For banks and certain other intermediaries, 50 per cent of the dividends collected are liable to IRAP, levied at the base rate of 4.65 per cent; and

- other non-commercial entities, such as Italian banking foundations, are subject to the same regime, set out in the point above, as far as IRES is concerned. However, 5 per cent of the dividends are subject to the withholding or substitute tax, set out above in the first point under 'Individual shareholders'.

### Tax-exempt entities

Dividends received by Italian-resident entities that are exempt from IRES are subject to a 20 per cent final withholding or substitute tax.

### Italian pension funds and Italian investment funds

Dividends received by Italian pension funds and Italian investment funds are not subject to withholding tax or substitute tax and are included in the annual net accrued results of such pension or investment funds.

The annual net accrued results of an Italian pension fund are subject to an 11 per cent substitute tax. Conversely, from 1 July 2011, the annual net accrued results of an Italian investment fund are not subject to substitute tax and the tax regime applicable to Italian investment funds is based on a withholding tax of 20 per cent in the hands of the investors on a cash basis.

### Italian real estate investment funds

Dividends received by certain Italian-resident real estate investment funds are not subject to withholding or substitute tax.

The annual net accrued results of an Italian real estate investment fund are not subject to substitute tax and the tax regime applicable to Italian investment funds is based on a withholding tax of 20 per cent in the hands of the investors on a cash basis.

### Taxation of non-resident recipients of dividends

Dividends received by non-resident shareholders with a permanent establishment in Italy through which the shareholding is held are not subject to any withholding tax and are included in the permanent establishment's IRES taxable income, generally, for an amount equal to 5 per cent of the dividend amount.

CONFIDENTIAL                                                        WH_MDL_00463478

For branches of banks and certain other intermediaries, 50 per cent of the dividends collected are liable to IRAP, levied at the base rate of 4.65 per cent.

Dividends received by shareholders that are not resident in Italy for tax purposes and that do not have a permanent establishment in Italy through which the shareholding is held are subject to a final withholding or substitute tax at a 20 per cent rate.

The Italian domestic withholding or substitute tax is reduced to 1.375 per cent on dividends paid out of profits realised as of 2008[5] to companies and entities:

- resident in a EU or EEA state included in a 'white list' established by Ministerial Decree; and

- subject to corporate income tax in their country of residence.

According to the Italian tax authorities, the refund procedure does not apply to companies acting as conduits and companies carrying out conduit transactions. Conduit companies include artificial structures, whereby the EU entity holding an Italian participation does not have an 'actual business' or an 'actual structure'. On the other side, conduit transactions include practices whereby an EU entity acquires and then shortly transfers back an Italian participation, just to benefit from the

reduced dividend withholding tax, otherwise not applicable to the original owner.

The Italian tax authorities have specified that, under a certain approach, the availability of the 1.375 per cent reduced rate applies on condition that the non-Italian resident has not benefited from a foreign tax credit in its country of residence for the Italian taxes levied on the dividends and that the shares have not been acquired in the frame of abusive transactions.

Under domestic Italian law, a non-Italian-resident shareholder, other than investors in savings shares and the companies and entities that satisfy the conditions under 'Taxation of non-resident recipients of dividends', above, for the 1.375 per cent reduced rate to apply, may recover up to one-fourth of the withholding tax levied in Italy on dividends by presenting evidence to the Italian tax authorities that an income tax has been fully paid on the dividends in the shareholder's country of residence, in an amount at least equal to the total refund claimed.

Alternatively, in the case of non-Italian resident shareholders residing in a country that is party to a tax treaty with Italy, the substitute tax can be applied by the depository or by its fiscal representative in Italy, if the depository is not a resident entity, at the lower treaty rate. For this purpose, the relevant participant in the Monte Titoli system must receive:

- a declaration from the beneficial owner identifying himself as the beneficial owner of the shares and confirming that the treaty conditions (such as the applicable treaty tax rate) are satisfied,

5
Please note that the Italian tax authorities, following a decision of the European Court of Justice, recognised the right of EU-resident companies to benefit from a reduced rate on dividends paid out of profits accrued before 1 January 2008. Specifically, EU-resident companies are to be granted a reduced rate of 1.65 per cent for dividends paid from 1 January 2004 to 31 December 2007 and a reduced rate of 1.375 per cent for dividends paid as of 1 January 2008. As a consequence, any higher withholding tax applied to dividends paid out of profits accrued before 1 January 2008 shall be refunded for the difference with the aforementioned reduced rates.

Freshfields Bruckhaus Deringer LLP                    *Dividend taxation for cross-border transactions*

CONFIDENTIAL                                                                                    WH_MDL_00463479

and, according to a certain interpretation provided by the Italian tax authorities, that such beneficial owner does not have a permanent establishment in Italy; and

- a certification from the tax authorities of the beneficial owner's country of residence, stating that the beneficial owner is a resident of that country for purposes of the income tax convention and, according to a certain interpretation provided by the Italian tax authorities, that, as far as it is known to such foreign tax authorities, the beneficial owner has no permanent establishment in Italy.

A 0 per cent rate applies if the relevant requirements for the Parent-Subsidiary Directive or the Agreement between the EU and Switzerland to apply are met.

Dividends paid by Italian companies to EU pension funds are subject to a domestic withholding tax levied at 11 per cent[6], unless a more favourable tax treaty regime is applicable.

Treatment of manufactured overseas dividends under stock loans or derivatives

### Stock loans
Manufactured overseas dividends (MODs) paid under a stock loan are not treated as dividends for Italian tax purposes.

MODs paid by an Italian resident borrower under a stock loan are treated as interest income in the hands of the lender and they are subject to a withholding tax at the rate of 20 per cent.

A specific domestic exemption may apply, according to a certain line of interpretation, where both the lender and the borrower are banks (the Banking Exemption).

The above withholding tax may be reduced under most tax treaties to 10 per cent.

According to the prevailing view, the 1.375 per cent Italian dividend reduced rate does not apply to MODs paid to EU-resident lenders.

### Derivatives
Payments under derivatives do not qualify as dividends for Italian tax purposes. They are not subject to Italian dividend withholding tax as described under 'Taxation of non-resident recipients of dividends', above, and are conversely subject to a 20 per cent substitute tax. The substitute tax does not, however, apply to white-list investors on the basis of a specific domestic exemption or to investors that may benefit from a treaty protection on derivative income.

Please note: the capital gain is not regarded as Italian-sourced income in case of gains on listed derivative instruments, such as futures.

---

[6]
Please note that the above law decree 13 August 2011, No. 138 had increased from 11 per cent to 20 per cent the rate of the withholding tax applicable on dividends paid to EU pension funds as from 1 January 2012. Conversely, the law decree 24 January 2012, No. 1, in force as of 24 January 2012, has re-introduced the 11 per cent withholding tax rate. However, since the latter decree is a 'law decree', its provisions must be converted into law by the Italian parliament within 60 days of its enactment. Should the decree not be converted into law, it (including all its provisions) will cease to have effects retrospectively. Moreover, be aware that the parliament may, on conversion of the decree into law, introduce amendments (or even eliminate) any of its provisions.

CONFIDENTIAL    WH_MDL_00463480

# Netherlands

What a dividend is

Neither Netherlands company law nor tax law uses the term 'dividend', even though in practice (profit) distributions on shares are typically referred to as dividends. Hence, below, we use the term dividends for all distributions on shares and distributions that are treated as such for tax purposes.

The following items qualify as (taxable) dividends.

- Distributions of profits on shares and other equity instruments (including distributions in kind and deemed dividends; for example, a sale of an asset at below market value to a shareholder).

- Distributions on loans that qualify as equity.

- Any partial repayment of capital (whether nominal share capital or share premium) by a Netherlands company, whether in cash or in kind, is treated as a dividend as well if and to the extent the Netherlands company has profits or retained earnings (including unrealised and anticipated profits). That is, except for repayments of recognised[7] nominal share capital, unless the general meeting of shareholders of the company has decided to repay nominal share capital and the repayment is effected through a reduction of the nominal value per share through an amendment of the company's articles of association.

- Repurchases of own shares by a Netherlands company, other than as a temporary investment, are treated as a dividend distribution if the purchase price of the shares exceeds the average amount of (recognised) paid-in capital (including capital surplus).

- The nominal value of bonus shares issued, unless these are issued out of recognised share capital (including share premium).

- Liquidation proceeds to the extent they exceed the recognised share capital (including share premium).

Entities that are subject to dividend withholding tax (DWT) include public and private companies (NV/BV), non-domestic companies tax resident in the Netherlands and partnerships that are opaque for Netherlands tax purposes. Subject to certain perceived abuse situations, co-operatives are not subject to DWT.

Generally, the definition of dividend under Netherlands double tax treaties follows the domestic Netherlands law definition of dividend addressed above.

How dividend income is attributed

A dividend is attributed to the owner of the shares on the dividend record date. This is, in principle, the person who holds the legal title to the shares (the formal recipient).

The formal recipient – under the Netherlands (civil) company law principles – is also the owner for Netherlands tax purposes. This may be different, however, if the legal owner

---

[7] Not all capital that is recorded as such in the commercial accounts is treated as recognised capital for dividend with holding tax (DWT) purposes. Capital created through certain share-for-share exchanges may not be considered as recognised paid-in capital for DWT purposes.

Freshfields Bruckhaus Deringer LLP                    *Dividend taxation for cross-border transactions*

CONFIDENTIAL                                            WH_MDL_00463481

has transferred, *de jure* or de facto, the full economic interest in the dividends to one single, other party (the economic owner).

If it is determined that the formal recipient is also the owner of the dividends for Netherlands tax purposes, the next question is whether this person is considered the beneficial owner under the Netherlands anti-dividend-stripping rules.

Under the anti-dividend-stripping rules, for purposes of claiming an exemption, reduction, credit or refund of DWT, a formal recipient of a dividend will not be considered the beneficial owner of the dividend if the formal recipient:

- pays consideration (in cash or in kind) in connection with the dividend distribution; and

- such payment forms part of a sequence of transactions, whereby it is likely that:
  - an individual or legal entity (*rechtspersoon*) benefits in whole or in part from the dividend, and the individual or legal entity is entitled to a less favourable exemption, refund or credit of DWT than the recipient of the dividend distribution; and
  - this individual or legal entity, directly or indirectly, retains or acquires a position in shares… that is comparable with its position in similar shares [on which the dividends are paid]… that it had before the sequence of transactions commenced.

The anti-dividend-stripping rules explicitly state that the term 'sequence of transactions' includes a sole acquisition of one or more dividend rights or the sole establishment of short-term rights of enjoyment on shares (for example, *usufruct*). Furthermore, it states that a sequence of transactions also applies to transactions entered into on a regulated public stock market.

There is no motive test in these anti-dividend-stripping rules. Even in situations where the parties have bona fide business reasons other than DWT considerations to enter into the relevant transactions, the anti-dividend-stripping rules may still apply. By way of concession, the legislator has stated that the rules should not affect the unwary buyer of shares on the stock exchange. A professional market party may, however, not be able to rely on this concession under all circumstances.

With respect to the 'consideration' criterion, it is not fully clear when one pays consideration 'in connection' with a dividend. Economically speaking, the value of a share will always include expectations of future dividends, so even the price for a straightforward purchase of a share may be considered to include a payment in connection with a dividend; it is questionable, however, whether the application of these anti-dividend-stripping rules can be stretched this far.

The Netherlands tax authorities take the position that the anti-dividend-stripping rules cannot be overruled by tax treaties, irrespective of whether or not these treaties impose their own condition that the recipient is the beneficial owner of the dividend distribution. Whereas the Netherlands Supreme Court has given a different interpretation to the term beneficial owner in the past, this position is not undisputed.

CONFIDENTIAL                                                                 WH_MDL_00463482

## Taxation of domestic recipients of dividends

Netherlands domestic recipients are, in principle, subject to DWT at the standard 15 per cent DWT rate. Generally, however, Netherlands domestic recipients are entitled to a credit for, an exemption from, or a refund of, DWT suffered in respect of dividend payments (see below).

### Corporations

Netherlands tax-resident corporate entities that are subject to corporate income tax are entitled to a credit against their 'mainstream' corporate income tax liability of DWT suffered on dividends that are included in their taxable income, if they are the beneficial owner of such dividends. If the amount of DWT to be credited exceeds the corporate income tax due, such excess is refunded.

Distributions on shares that qualify for the participation exemption in the hands of the corporate recipient (in case of a qualifying interest of 5 per cent or more) are generally exempt from DWT.

### Partnerships

If the partnership is opaque for Netherlands tax purposes, the analysis under 'Corporations', above, applies *mutatis mutandis*. If the partnership is transparent for Netherlands tax purposes, the DWT position depends on the position of the participants in the partnership.

### Tax-exempt entities as shareholders

Qualifying tax-exempt pension funds and charities resident in the Netherlands are entitled to a refund of DWT suffered on dividends, if they are the beneficial owner.

## Taxation of non-resident recipients of dividends

Recipients resident outside the Netherlands are, in principle, subject to DWT at the standard 15 per cent DWT rate, subject to relief under the (Netherlands domestic rules implementing the) EU Parent-Subsidiary Directive or a double tax treaty (see below).

### Corporations as shareholders

Corporate entities resident outside the Netherlands that hold an interest of less than 5 per cent are generally subject to 15 per cent DWT (a notable exception applies under the double tax treaty between the Netherlands and the UK, where the DWT rate is reduced to 10 per cent in that case).

Corporate entities resident in the EU/EEA with an interest of 5 per cent or more are generally exempt from DWT if the distributing company and the aforementioned corporate entity are eligible for the benefits of the EU Parent-Subsidiary Directive.

In case of corporate entities resident outside the EU, typically a double tax treaty provides for a reduction of the DWT rate (to 0–5 per cent) if the corporate entity holds a certain minimum shareholding of at least 10–25 per cent. Below this threshold, the DWT rate would normally remain 15 per cent.

CONFIDENTIAL    WH_MDL_00463483

## Partnerships

If the partnership is opaque for Netherlands tax purposes, the analysis under 'Corporations as shareholders', above, applies *mutatis mutandis* (assuming the partnership is a qualifying entity under EU Parent-Subsidiary Directive). If the partnership is transparent for Netherlands tax purposes, the DWT position depends on the position of the participants in the partnership.

## Tax-exempt entities as shareholders

Qualifying tax-exempt pension funds and charities resident in the EU/EEA, or a jurisdiction outside the EU/EEA that has concluded a double tax treaty with the Netherlands that provides for adequate exchange of information provisions, are entitled to a refund of DWT suffered on dividends in respect of portfolio (<5 per cent) shareholdings, if they are the beneficial owner.

Under the double tax treaty between the Netherlands and the US, qualifying tax-exempt US pension funds are entitled to an exemption at source from, or a refund of, DWT.

Treatment of manufactured overseas dividends under stock loans or derivatives

## Taxation

In principle, a manufactured overseas dividend (MOD) is not treated as a dividend. Consequently:

- a MOD received by a Netherlands tax-resident corporation under a stock loan is, in principle, taxable for corporate income tax purposes (unless the stock loan or

similar arrangement would construe ownership of the underlying shares on the Netherlands tax-resident corporation and the participation exemption would apply);

- no credit is available for any foreign tax imposed on MODs paid by non-Netherlands tax residents (with the same exception as above, and in addition, an exception may apply under the US–NL treaty based on which the lender under a stock loan is considered the beneficial owner of any dividends received during the term of the stock loan, and MODs are treated as real dividends);
- a MOD paid under a stock loan is usually deductible for corporate income tax purposes;
- MODs received under a cash-settled derivative (for example, future, equity swap, forward) are, in principle, taxable;

MODs, whether paid under a stock loan, derivative or otherwise, are not subject to DWT (even if the MOD represents a Netherlands dividend subject to DWT itself).

## Anti-abuse considerations regarding the conversion of a dividend into an MOD

Neither a stock loan with a MOD nor a combination of a long share position and a cash-settled derivative in itself should be considered an abuse of law under the Netherlands general abuse of law doctrine. This may be different if these transactions form part of a larger structured transaction that may be exposed to the general Netherlands abuse of law doctrine (*fraus legis*).

CONFIDENTIAL    WH_MDL_00463484

# Spain

## What a dividend is

A 'dividend' is defined as a distribution by a corporation to its shareholders from current or accumulated profits.

For corporate income tax, however, other income, for example, distributions under equity *jouissance* rights or constructive dividends, should be treated the same as dividends. Payments under profit-participating loans qualify as interest, not as dividends.

In any case, dividends will give rise to taxable income in the hands of the recipient and are a non-deductible expense for the distributing entity. Any dividends not included as income in the profit and loss account of the shareholder should not receive the tax treatment of a dividend. In this case, repayment of capital contributions up to the amounts contributed into the share capital or reserves of a corporation and the distribution of profits accrued before the shareholder acquires the shares should be excluded from the shareholder's profit and loss account.

Spanish double taxation treaties do not define the term 'dividend', but, in line with the Organisation for Economic Co-operation and Development (OECD) Model Treaty, rely on the definition of dividends under the laws of the source country. A typical deviation from this rule is the consideration as dividend income of liquidation proceeds under certain tax treaties.

## How dividend income is attributed

A dividend is attributed to the legal owner of the shares on the dividend record date. Dividends on shares sold after the record date but before the payment date are income of the seller. Any dividends paid to the buyer of shares cum dividend should be treated as a reduction in the price of the shares and not included in the profit and loss account of the buyer. This rule would apply to dividends derived from profits generated before the shares are acquired. For stock loans[8], Spanish regulations specifically provide that any manufactured dividends should be deemed interest income for the lender of the shares.

Beneficial ownership does not exist in the Spanish tax system, where there is no such split between legal and economic ownership. Where Spanish double taxation treaties have included such concept, it has been translated into the Spanish version of the treaty as '*beneficiario efectivo*' (real recipient) to avoid any reference to the Spanish law indivisible concept of ownership.

There is no legal or tax definition in Spain of '*beneficiario efectivo*' (or beneficial owner). However, Spanish tax authorities and legal commentators accept that an intermediary such as an agent or nominee between the recipient and the payer cannot be a beneficial owner, following the

[8] Spanish legislation provides for the regulation of certain stock loans, which, in practice, are those usually entered into. The tax treatment of regulated stock loans is expressly provided for in Spanish legislation and therefore, the attribution of dividend income analysis and the qualification of the MOD is a relatively straightforward analysis. In this brochure we will assume that when referring to stock loans, the stock loans comply with the necessary requirements to be deemed regulated stock loans.

CONFIDENTIAL

WH_MDL_00463485

Commentary of the OECD Model Treaty[9]. Most commentators agree that analysis as to the ownership attributes should be carried out on the income, not who owns the underlying assets.

Commentators refer to these five criteria to determine the beneficial owner of dividends. Is the income received for the recipient's account or on account of a third party? Does the recipient record the income in its profit and loss account? Is there a contractual obligation for the recipient to pay the income received to a third party? Does the recipient of the income bear the risk of the non-performance of the ultimate company? Are the obligations of the recipient of the income vis-à-vis its creditors independent of whether or not the ultimate company meets is obligations vis-à-vis the recipient of the income?.

The Spanish National Court (*Audiencia Nacional*) has used a simple approach to interpret the term beneficial owner, in our view, making a simple approach, in a judgement issued in the context of royalties paid by a Spanish football club to a Hungarian tax resident entity for the image rights of a football player[10]. In this judgement, the court denied the application

of the tax treaty between Hungary and Spain (that provided the tax exemption of royalties in the state of source) on the basis that the Hungarian entity was not the beneficial owner of the royalties.

The court concluded this based on an additional assignment agreement of such image rights between the Hungarian entity and a Dutch entity under which the Hungarian entity paid 99 per cent of the royalties from the Spanish football club on receipt of the royalties. This second assignment agreement and the near-instant transfer of the income from the Spanish football club – from the Hungarian entity to the Dutch entity – proved the beneficial owner of the royalties was the Dutch entity, not the Hungarian entity. Therefore, according to the court, no further analysis was needed.

Although the Spanish tax system does not refer to 'beneficial ownership', the general re-characterisation and anti-avoidance rules might be used to challenge the attribution of dividend income and the entitlement to the corresponding withholding tax credit.

Under Spanish general re-characterisation and anti-avoidance rules, a legal transaction can be re-characterised if it is a sham or if it is an artificial arrangement aimed at getting a tax advantage. The general anti-avoidance and re-characterisation rules do not question the ownership of the income but the appropriateness of the structure to achieve the effects obtained.

Certain repo transactions on or around dividend payment dates have been re-characterised under Spanish anti-avoidance rules by Spanish courts. In the Spanish

---

9
In 2011 the OECD published a draft proposal of changes to the OECD Commentary to the Model Treaty on beneficial ownership (OECD should be producing new working papers on the subject in 2012). Such proposal clarifies the term 'beneficial owner'. For example, the draft provides that a beneficial owner should be entitled to the full right to use and enjoy the relevant dividends and that the concept of beneficial ownership included in tax treaties should be interpreted in the light of the Commentaries and not solely from the perspective of the internal legislation of the relevant source state. It should be noted that the Spanish courts have accepted that the Commentary to the OECD Model Treaty apply retrospectively (ie, Supreme Court 11 June 2008).

10
Judgement of the National Court dated 18 July 2006.

---

CONFIDENTIAL

WH_MDL_00463486

market it is common to carry out stock loans instead of repo transactions as the tax law provides a stronger analysis about the attribution of the relevant dividend income to the borrower. Derivative transactions immediately before the dividend record date, with a short term and between pre-identified parties, are seen by the Spanish tax authorities as aggressive transactions.

### Taxation of domestic recipients of dividends

Dividends received by corporations are fully taxable but benefit from a 100 per cent tax credit if the shareholder, directly or indirectly, holds 5 per cent or more of the distributing company and has held such shareholding for at least one year (either before or after the distribution) or a 50 per cent tax credit otherwise. Shareholders benefiting from the 100 per cent tax credit would not be subject to withholding tax. Otherwise, a 21 per cent (19 per cent)[11] withholding tax would apply. The withholding tax is treated as a payment on account and is credited against the recipient's corporate income tax liability for the year concerned. It is a refundable credit.

The dividend imputation tax credit above is not available, among other cases, when the shares paying the dividend have been acquired within the two-month period before the dividend payment date and the shareholder transfers the shares paying the dividend or other fungible shares within the two months after the dividend payment date.

Stock dividends distributed free of charge from the earnings or reserves of the company are deemed not to constitute taxable income at the time of issue. Their taxation is deferred until the sale of the shares. This rule also applies in the case of a non-resident recipient of the dividends.

Foreign-source dividends derived by a Spanish resident corporation are exempt if several conditions are met. These include that the minimum shareholding percentage and period mentioned above for the 100 per cent domestic tax credit is fulfilled and that the non-resident corporation carries out business activities outside Spain.

Alternatively, the Spanish resident parent may opt to apply a tax credit for the foreign withholding tax paid on the dividends and a tax credit for the underlying corporate income tax paid by the subsidiary in respect of the dividends. Under certain conditions, dividends paid by foreign shares are also exempt if the acquisition cost of the shares is above €6m. The exemption applies to any dividends received from the non-resident corporation once the minimum shareholding percentage or acquisition cost and minimum holding period are met.

Spanish non-profit entities that respect the corresponding statutory regime in force benefit from a tax exemption for distributions of dividends irrespective of the participation of the non-profit entity in the company distributing the dividends. These dividends would not be subject to withholding tax upon their distribution.

---

11
Applicable tax rates are 21 per cent on years 2012 and 2013 and 19 per cent from year 2014 onwards.

CONFIDENTIAL    WH_MDL_00463487

## Taxation of non-resident recipients of dividends

Non-resident corporations are subject to a 21 per cent (19 per cent)[12] Spanish withholding tax on any Spanish-source dividend income (as well as to other profit distributions).

According to the Spanish tax legislation implementing the provisions of the EU Parent-Subsidiary Directive, dividends paid to qualifying parent companies in other EU member states are exempt. To qualify as a parent, a company must hold a direct or indirect participation of at least 5 per cent in the capital of the subsidiary for one year (before or after the distribution of the dividends). This 5 per cent participation requirement applies since 1 January 2011. Previously, a 10 per cent shareholding was required, but the European Court of Justice concluded that Spain had infringed the EU principle of free movement of capital by applying more stringent requirements to EU entities than those required from Spanish residents.

However, the above exemption from Spanish tax does not apply where most of the voting rights in the EU parent company is directly or indirectly held by individuals or companies not resident in any EU member state and the EU parent company lacks an economic purpose.

In practice, all double taxation treaties to which Spain is a party provide for a reduction of Spanish withholding taxes, usually down to 15 per cent. Occasionally,

a further reduction to 5 per cent can be achieved, on portfolio shareholdings (for example, tax treaties with Malta, Barbados, Malaysia, Colombia, Saudi Arabia, Singapore and Uruguay). Some treaties provide for 0 per cent, but require a significant shareholding.

For foreign partnerships, the tax treatment in Spain of the dividend income will require a case-by-case analysis as Spanish tax regulations do not always characterise foreign partnerships as tax transparent and situations of double taxation may arise.

Spanish dividends and other participations in profits obtained by EU UCITs that fall under Directive 2009/65, of 13 July, are subject to a 1 per cent tax on such dividends. Such dividends are, generally, initially subject to a 21 per cent (19 per cent)[13] withholding tax in Spain and, therefore, the corresponding refund should be requested.

## Treatment of manufactured overseas dividends under stock loans or derivatives

A manufactured overseas dividend (MOD) received by a Spanish corporation under a stock loan is fully taxable for corporate income tax purposes, with no dividend credit associated.

Under Spanish regulations, a MOD paid under a stock loan should be treated as interest income in the hands of the lender and, therefore, would be subject to withholding tax at the current 21 per cent

---

[12] Applicable tax rates are 21 per cent on years 2012 and 2013 and 19 per cent from year 2014 onwards.

[13] See footnote 12 above.

CONFIDENTIAL                                                                                    WH_MDL_00463488

(19 per cent)[14] rate. Interest withholding tax exemptions would be available to EU resident lenders, financial institutions registered with the Bank of Spain and lenders entitled to an interest exemption under their applicable tax treaty. If the tax authorities characterise the MOD as a capital gain, which is subject to a 21 per cent (19 per cent)[15] non-resident income tax in Spain, EU lenders and treaty lenders, as general rule, would be exempt.

A MOD paid under a stock loan is treated as a financial expense and should be fully deductible for corporate income tax purposes.

A MOD received under cash-settled derivatives is fully taxable in the hands of the recipient and is deductible in the hands of the payor for corporate income tax purposes. The Spanish tax authorities do not follow a sophisticated approach to financial derivatives. They have characterised MODs as a capital gain, but they may take a different view in light of the specific facts. In this regard, should the asset underlying the derivative relate to interest rates or should there be any previous transfer of funds, the characterisation of the MOD as interest cannot be discarded.

As capital gains, MODs paid to Spanish tax resident corporations or tax treaty non-residents are exempt from withholding tax in Spain. As interest, recipients of MODs that are either EU resident, financial institutions registered with the Bank of Spain or entitled to an interest exemption under their applicable tax treaty should continue to be tax exempt.

14
See footnote 12.

15
See footnote 12.

Freshfields Bruckhaus Deringer LLP     *Dividend taxation for cross-border transactions*

CONFIDENTIAL                                         WH_MDL_00463489